The plaintiff, Jamie Leigh Gulledge, appeals from a summary judgment in favor of the defendants, Brown Root, Inc.; Clark, Greer, Latham Associates; Gulf Electric Corporation; Simco, Inc.; and Rivers Equipment Co. (hereinafter collectively referred to as "defendants"), in Gulledge's suit to recover damages for personal injuries allegedly caused by the defendants' negligence. We reverse the summary judgment and remand the cause for further proceedings.
Ms. Gulledge was employed by Kerr McGee Chemical Corporation ("Kerr McGee"). She was injured while working with a conveyor belt system that had been installed at Kerr McGee's plant. The conveyor system was part of a "pelletizer unit." The purpose of the pelletizer unit was to "pelletize" iron oxide dust by mixing it with water and turning it into pellets to make it easy to transport and handle. The pelletizer unit covered a large area and consisted of several types of machines used in the "pelletizing" process, as well as a conveyor (a "Z belt") used to transport the "pelletized" iron oxide.
Brown Root was responsible for performing routine maintenance on the conveyor belt rollers. Clark, Greer, Latham Associates was an engineering firm that confirmed that the bypass system within the pelletizer unit would fit in and among the structural interferences at the plant; it kept an employee on site at the plant. Gulf Electric Corporation wired the pelletizer unit in accordance with a set of plans provided by the management of the plant. Simco, Inc., was one of several companies that supervised the installation of the pelletizer unit, and it assisted the plant operators who ran the system after its installation. The conveyor belts in the pelletizer unit were leased to the plant from Rivers Equipment Company.
Gulledge's complaint alleged negligence in the design, manufacture, assembly, installation, wiring, and maintenance of the pelletizer system involved in this suit; negligent failure to warn of dangers inherent in the performance of her job; liability for a defective product under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"); and willful and wanton conduct in the design, manufacture, installation, and wiring of various components of the pelletizer system and in the failure to warn. The defendants moved for a summary judgment based on the doctrines of contributory negligence and assumption of the risk. The trial court entered a summary judgment in favor of the defendants on the negligence claims, writing as follows:
 "[Gulledge] was seriously injured while attempting to clean a roller on a moving conveyor belt with a screwdriver. Viewing the evidence in the light most favorable to [Gulledge], she was acting pursuant to instructions from her employer that the conveyor be operated continuously and instructions from an employee of Defendant Brown 
Root, Inc., that the rollers be cleaned in this fashion. Defendants are entities which built, installed or wired it; or which acted as engineering consultants to [Gulledge's] employer.
 "Defendants have moved for summary judgment, and have assigned and argued several grounds. The court has considered all grounds and will discuss the alleged contributory negligence of [Gulledge]. . . .
" '. . . .'
 "It is clear that [the requisite elements of contributory negligence as set forth in Campbell v. Alabama Power Co., 567 So.2d 1222 (Ala. 1990)] are established in this case . . . and there is no substantial evidence to the contrary. [Gulledge] argues that her exposure to the danger was not voluntary in that she was ordered *Page 1327 
to act as she did. However, contributory negligence as opposed to assumption of the risk, 'does not require proof of a voluntary, affirmative exposure to the danger.' Sprouse v. Belcher Oil Co., 577 So.2d 443 (Ala. 1991)."
The trial court also entered summary judgment in favor of the defendants on Gulledge's AMELD claim and wantonness claim. Gulledge argues neither of these summary judgments on appeal, however, and consequently neither of these rulings by the trial court is before us. Further, we do not address Gulledge's argument that this Court, through its inherent power to change a common law rule, should abolish the doctrine of contributory negligence and adopt the doctrine of comparative negligence, because this issue was not considered by the trial court.
We note, as the trial court pointed out, that the defendants do not include Gulledge's employer, Kerr McGee, or her supervisor, who she alleges instructed her to keep the conveyor running and to follow the instructions from the maintenance department as to the method by which to clean the conveyor she operated without shutting it off. The defendants are, in Gulledge's words, "entities which built, installed, or wired [the conveyor]; or which acted as engineering consultants to [Gulledge's] employer."
The summary judgment was proper if there was no genuine issue of material fact as to Gulledge's alleged contributory negligence and the defendants were entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P. Because this action was not pending on June 11, 1987, the applicable standard of review is the "substantial evidence" rule. See Ala. Code 1975, §12-21-12. "Substantial evidence" is "evidence of such weight and quality that fairminded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co.of Florida, 547 So.2d 870, 871 (Ala. 1989).
In Chilton v. City of Huntsville, 584 So.2d 822, 824-25 (Ala. 1990), this Court held:
 "In order to establish the affirmative defense of contributory negligence [which the defendant bears the burden of proving], there must be a showing that the party charged had knowledge of the dangerous condition; that he appreciated the danger under the surrounding circumstances; and that, failing to exercise reasonable care, he placed himself in the way of danger. Bridges v. Clements, 580 So.2d 1346 (Ala. 1991); Knight v. Seale, 530 So.2d 821 (Ala. 1988). Although contributory negligence may be found to exist as a matter of law when the evidence is such that all reasonable people must reach the same conclusion, the question of the existence of contributory negligence is normally one for the jury. Bridges v. Clements; Knight v. Seale.
". . . .
 ". . . In Alabama Power Co. v. Mosley, 294 Ala. 394, 399, 318 So.2d 260, 263 (1975), this Court, quoting Dwight Mfg. Co. v. Word, 200 Ala. 221, 225, 75 So. 979, 983 (1917), stated:
 " ' "Contributory negligence is not predicated solely on knowledge of the danger, and the certainty of injury to follow. If such were the rule, contributory negligence would be a synonym for willful suicide or self-injury. If plaintiff had knowledge of facts sufficient to warn a man of ordinary sense and prudence of the danger to be encountered, and of the natural and probable consequences of his own conduct in the premises, then he was guilty of negligence if he failed to exercise ordinary care to discover and avoid the danger and the injury. [Citations omitted.]" ' "
(Emphasis added in Chilton v. City of Huntsville.) See Sprousev. Belcher Oil Co., 577 So.2d 443 (Ala. 1991); Campbell v.Alabama Power Co., 567 So.2d 1222 (Ala. 1990); Electric ServiceCo. of Montgomery v. Dyees, 565 So.2d 244 (Ala. 1990); CentralAlabama Elec. Co-op v. Tapley, 546 So.2d 371 (Ala. 1989). Mere heedlessness is not enough. Campbell v. Alabama Power *Page 1328 Co., supra; Central Alabama Electric Co-op v. Tapley, supra.
 "[C]ontributory negligence, while requiring proof of both knowledge and appreciation of the danger, does not require proof of a voluntary affirmative exposure to the danger [as does assumption of the risk]; rather, it merely requires proof that the plaintiff failed to exercise reasonable care.
 " '. . . [C]ontributory negligence is a matter of some fault or departure from the standard of reasonable conduct, however unwilling or protesting the plaintiff may be. . . . [Contributory negligence involves] risks which he merely might have discovered by the exercise of ordinary care.'
 "Koshorek v. Pennsylvania R.R., 318 F.2d 364 (3rd Cir. 1963)."
Sprouse v. Belcher Oil Co., 577 So.2d at 444. (Citation omitted.)
Viewing the evidence in the light most favorable to Gulledge, as we are required to do under the applicable standard of review, we find evidence of the following:
Gulledge had been employed by Kerr McGee since August 1988, when she was hired as a production operator in the digestion unit of the plant. "Digestion" involves putting metal ore through a leaching process with hydrochloric acid, and the unit used conveyor belts to transport material. When she began working for Kerr McGee, she attended a 90-day training program and a 2-day safety orientation course conducted by a safety engineer from Kerr McGee. She was also given a safety handbook describing Kerr McGee's safety rules and procedures.
Kerr McGee had a company-wide "lockout, tag-out, try-out" procedure,[1] which was designed to prevent someone from being injured while working on "live" equipment or lines and to prohibit someone from working on equipment while it was in operation. This procedure was covered in the safety orientation program and was outlined and described in the safety handbook and in a detailed three-page memorandum. Gulledge had read the handbook and was familiar with its provisions, including the "lock-out, tag-out, try-out" procedure.[2] She had also been recognized for her observance of safety procedures and had served on numerous safety committees.
In June 1989, Kerr McGee began operating a new pelletizer unit and Gulledge was transferred to that unit. Thereafter, her supervisor conducted, and she attended, a week-long training class on the pelletizer operation. She was instructed in the stopping and starting mechanisms of the system and was advised that the emergency stop switch would shut off all equipment in that unit. From June until November 1989, Gulledge worked around a conveyor belt (known as a "Z belt") that transported the pelletized iron oxide. She knew that the "lock-out, tag-out, try-out" procedure applied to the Z belt conveyor, and she had never observed anyone cleaning or performing maintenance on the Z belt conveyor without observing this safety procedure.
On November 17, 1989, Kerr McGee installed a new 50-foot conveyor whose purpose was to improve efficiency and to speed the process of transporting the pelletized iron oxide from the plant. This new conveyor was either to replace the Z belt or to operate as an adjunct to the Z belt. In the days following, the operators experienced *Page 1329 
problems with a build-up of iron oxide on the conveyor belt that caused the belt to "track" improperly, and the new conveyor was shut down when the belt broke or when the "rotary valves" failed. On numerous occasions, Brown Root, under contract to provide maintenance for the pelletizer unit, had been called to clean and make adjustments to the unit because the iron oxide build-up continued to create problems. It made the adjustments by shutting down the unit, using the "lock-out, tag-out, try-out" procedure.
Thereafter, Gulledge's supervisor instructed her not to "shut down" the conveyor, but to "[k]eep it going . . . [in order to] meet [a] rush order, . . . to increase production or make sure production got out in a hurry," and to follow the demonstration provided by someone in the maintenance department to ensure that the unit continued to run. Subsequently, an employee of Brown Root, Inc., demonstrated a method of cleaning the tail rollers of the new conveyor while it was in operation. The demonstrated cleaning method consisted of inserting an arm through the handrails surrounding the tail rollers, sticking a hand into the six-inch space between the top of the belt and the bottom, where the rollers were located, and chipping away the iron oxide on the rollers with a screwdriver, without shutting the unit off. After Gulledge had received this instruction from her supervisor, someone in the maintenance department adjusted the "tracking" and cleaned iron oxide from the unit, as often as 6 or 7 times in a 12-hour shift on several days, without stopping the unit according to the "lock-out, tag-out, try-out" procedure. This cleaning method was also carried out by other employees without following the general "lock-out, tag-out, try-out" procedure.
On November 27, 1989, Gulledge attempted to clean the tail rollers with a screwdriver in the manner demonstrated to her, without stopping the unit. In that attempt, she was severely and permanently injured when her right hand and arm were caught in the conveyor.
Gulledge says that she was aware of the potential dangers inherent in working near the pelletizer unit after the installation of the new conveyor and as a result of the problems encountered with the conveyor up to that point. Nevertheless, she says she had reason to believe that her supervisor had modified the safety procedures with which she was familiar. Although she acknowledges that this new procedure was contrary to established safety procedures, she stated that she reasonably relied on her supervisor's instruction as being in accord with applicable standards, because he was the one who had conducted the orientation for the employees who would be operating the pelletizer unit when it was initially installed; because of his authority as a representative of Kerr McGee; because of his knowledge of the equipment and the modification procedures; and because, she says, she believed that this procedure was a modified safety procedure that she was to follow.
Further, Gulledge asserts that not only did she rely on her supervisor and on the cleaning demonstrations shown by the employee from Brown Root — both of whom, she says, had knowledge of the inherent danger of the pelletizer unit — as to the safety procedures to follow, but also, she says, she was not shown any alternative method or provided with any alternative equipment with which to make cleaning the pelletizer unit safer; and she says she did not have a conscious awareness that her arm could be caught and injured by the unit as she removed the iron oxide from the roller by the method she had been told to use. She argues that this evidence creates a genuine issue of material fact as to whether she was contributorily negligent. She thus argues that the trial court erred in entering the summary judgment in favor of the defendants on her negligence claim.
The defendants contend that the trial court properly entered the summary judgment as to the negligence claim. The defendants argue that the trial court was correct, based on the doctrine of contributory negligence, because the undisputed evidence shows that Gulledge was aware of the danger she was exposing herself to by *Page 1330 
cleaning the conveyor belt with a screwdriver while it was still running, that she appreciated the danger under the circumstances, and that she nevertheless placed herself in the way of the danger.
We agree that, even viewed in the light most favorable to Gulledge, the evidence establishes that Gulledge was aware of danger in the revised procedure of cleaning the moving conveyor. The question we must resolve is whether the evidence, viewed in that light, shows that she failed to exercise reasonable care in exposing herself to this danger. Chilton v.City of Huntsville, supra. The fact that she appreciated the danger does not in itself establish contributory negligence. Although the defendants made a prima facie showing of contributory negligence, we note that for summary judgment purposes contributory negligence under these facts is established only if Gulledge failed to rebut that showing by substantial evidence that she acted with reasonable care. Gulledge presented evidence that she attempted to clean the moving belt only after a cleaning method had been demonstrated, without injury, by a maintenance supervisor. She also presented evidence that her attempt to use this cleaning method was pursuant to instructions from her supervisor. The record further indicates that, during the period immediately before Gulledge's injury, the belt was often cleaned without being stopped.
The fact that a modified procedure for cleaning the moving belt was demonstrated to Gulledge and the fact that the procedure was actually used serve to distinguish this case from the factually close case of Coosa Manufacturing Co. v.Williams, 133 Ala. 606, 611, 32 So. 232 (1902). In Williams, the Court held that the plaintiff had been contributorily negligent, as a matter of law, in following his supervisor's instructions in trying to place a belt on a moving pulley. There was no evidence in Williams that the plaintiff had been shown any similar technique as a demonstration that the belting operation could be used safely. Unlike the plaintiff in this case, the plaintiff in Williams proceeded on his supervisor's instruction without being shown that the instruction could be safely implemented.
This Court has often noted that questions of negligence incorporate factual evaluations that are almost always within the province of the jury. Osmer v. Belshe Industries, Inc.,585 So.2d 791 (Ala. 1991). It follows that a summary judgment based on the doctrine of contributory negligence is seldom proper.Jones v. Power Cleaning Contractors, 551 So.2d 996 (Ala. 1989), and Knowles v. Poppell, 545 So.2d 40 (Ala. 1989). In the case before us, our inquiry must be whether reasonable persons could disagree as to whether Gulledge acted with ordinary care when she attempted to clean the moving conveyor belt. We make this inquiry in light of evidence that (1) she appreciated that the operation was dangerous, (2) she was aware that the cleaning operation violated earlier safety procedures, (3) she had been instructed by her supervisor to clean the conveyor without turning it off, (4) she had seen a demonstration as to how the conveyor could be cleaned without stopping its operation, and (5) this cleaning procedure had been used by other employees prior to her injury.
We conclude that reasonable persons could disagree as to whether Gulledge acted with ordinary care in trying to clean the moving conveyor as she had been shown. Although the simple instruction by her supervisor was not in itself sufficient to raise an issue of material fact as to whether Gulledge was negligent in attempting to clean the conveyor, her evidence that a cleaning technique was demonstrated and used does make the question of her negligence an issue for the jury. Accordingly, the summary judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
MADDOX, SHORES, ADAMS and INGRAM, JJ., concur.
[1] The "lock-out, tag-out, try-out" procedure required that before someone attempted to perform work or maintenance on moving equipment (including conveyors), electrical circuitry, or chemical lines, the controlling switches or valves must be shut off, locked out, and tagged out, and the equipment, circuit, or lines then tried out to ascertain whether they were operable or de-energized so that they would not start up during the work or maintenance.
[2] The "lock-out, tag-out, try-out" procedure was described in the safety handbook as follows:
 "Machinery or equipment capable of starting must have their power sources de-energized or disengaged and locked into the safety position during repair or inspection. . . .
 "The lockout must be accomplished prior to beginning any work on such equipment or machinery. . . . To ensure that the job will be completed in a safe working environment, each individual involved must assume a full share of the responsibility for [her] own safety by following proper lockout procedures." *Page 1331