Roberta BORDEN, etc., Plaintiff,

v.

CSX TRANSPORTATION, INC.;
et al., Defendants.

Civ. A. No. 91V–901–N.

United States District Court,
M.D. Alabama, N.D.

Nov. 29, 1993.

J. McGowin Williamson, Williamson and Williamson, Greenville, AL, and John A. Taber, Taber and Dansby, Montgomery, AL, for plaintiff.

Walter A. Byars and William A. Shashy, Steiner, Crum and Baker, Montgomery, AL, for defendants.

## OPINION

VARNER, District Judge.

This cause is now before the Court on Defendants' Motions for Summary Judgment filed herein August 25, 1993, along with supporting briefs and materials; and on Plaintiff's opposition thereto filed herein September 9, 1993, as amended September 10, 1993, with supporting materials; and on the Motion to Strike filed herein September 17, 1993, by Defendants CSX, National Railroad and Cheatwood. The Court has jurisdiction of this cause pursuant to 28 U.S.C. §§ 1331, 1349, 1441, and 1446.

### I. Background

On February 16, 1991, a train owned and operated by Defendant National Railroad Passenger Corporation (Amtrak) struck an automobile on Butler County Road 30 in Butler County, Alabama. The collision killed the Plaintiff's intestate, Robert Day Lewis. Plaintiff is Administratrix of Mr. Lewis' estate. Defendant CSX owned and operated the railroad where the collision occurred. Defendant Cheatwood was the engineer of the train. Defendant Butler County Commission (Butler County) is the owner and the governing body with the authority to maintain Butler County Road 30 and all adjacent right-of-ways thereto and up to 50 feet on either side of the railroad track owned by CSX.

Plaintiff Borden, as Administratrix of the Estate of Robert Day Lewis, filed a two-count Complaint in the Circuit Court of Lowndes County, Alabama, alleging that the negligence and wantonness of Defendants Amtrak, CSX and Cheatwood caused the death of Lewis.[1] Defendants subsequently removed the action to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. Defendants Amtrak, CSX and Cheatwood previously moved for summary judgment on July 1, 1992. By Order dated November 20, 1992, the Court denied the Motion for Summary Judgment in all respects except on the issue of preemption. Later, by Order dated August 5, 1993, the Court denied Defendants' Motion for Summary Judgment on the preemption issue as well. Defendant Butler County was named as a Defendant in this action by Plaintiff's Amended Complaint of July 24, 1992. All Defendants now move for summary judgment asserting, as in the previously filed summary judgment motion, that no genuine issues of material fact exist to establish Defendants' negligence or wantonness as alleged in Counts 1 and 2 of the Amended Complaint. Additionally, Defendants claim that Robert Day Lewis was contributorily negligent as a matter of law, thus entitling Defendants to summary judgment. Alternatively, Defendants argue that federal law preempts Plaintiff's State law claims, which would entitle Defendants to judgment as a matter of law on these claims. All claims in the Complaint appear to be based on the laws of the State of Alabama. Each of these grounds is discussed separately below.

### II. SUMMARY JUDGMENT STANDARD

In considering a motion for summary judgment, this Court must refrain from deciding material factual issues but, rather, must decide whether such factual issues exist and, if not, whether the party moving for summary judgment is entitled to judgment as a matter of law. See *Dominick v. Dixie National Life Ins. Co.*, 809 F.2d 1559 (11th Cir.1987). Furthermore, all inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. See *Tip-*

1. As hereafter mentioned, Defendant Butler County was subsequently added by amendment.

*pens v. Celotex Corp.,* 805 F.2d 949 (11th Cir.1986). "Rule 56(c) mandates the entry of summary judgment * * * against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); accord *Kramer v. Unitas,* 831 F.2d 994, 997 (11th Cir.1987). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no **genuine** issue of **material fact**" [emphasis in original]. *Anderson v. Liberty Lobby,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a [reasonable] jury to return a verdict for that party * * *. If the evidence is merely colorable * * * or is not significantly probative, summary judgment may be granted." Id., at 249–50, 106 S.Ct. at 2510–11; accord *Brown v. City of Clewiston,* 848 F.2d 1534, 1537 (11th Cir. 1988).

### III. FEDERAL PREEMPTION

Defendants' initial argument for summary judgment is that Plaintiff's asserted State law claims are preempted by federal law. This issue is largely controlled by the United States Supreme Court's recent decision in *CSX Transportation, Inc. v. Easterwood,* —— U.S. ——, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). In *Easterwood* the Court addressed the preemptive effect of the Federal Railroad Safety Act of 1970 ("FRSA"), 45 U.S.C. §§ 421–447 (1988 & Supp. II 1990).

The FRSA contains an express preemption clause which provides, in part:

"The Congress declares that laws, rules, regulations, orders and standards relating to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation,

order, or standard covering the subject matter of such State requirement." 45 U.S.C. § 434 (1988).

Thus, the main inquiry on the issue of preemption is whether the Secretary of Transportation has issued regulations covering the same subject matter as the State law pertaining to Plaintiff's claims.

### A. GRADE CROSSING CLAIM

■ The Defendants assert that Plaintiff's claims are preempted by federal law. Defendants argue that, under the standards set forth in *Easterwood,* preemption has occurred because federal funds participated in the design and installation of warning devices at the crossing in question.

In *Easterwood* the Supreme Court specifically addressed preemption of claims based on inadequate warning devices at grade crossings. The Court held that when the provisions of 23 C.F.R. §§ 646.214(b)(3) and (4) "are applicable, state tort law is preempted." *Easterwood,* —— U.S. at ——, 113 S.Ct. at 1740–41. In further discussing these provisions, the Court stated:

"[U]nder §§ 646.214(b)(3) and (4), a project for the improvement of a grade crossing must either include an automatic gate or receive FHWA approval if federal funds 'participate in the installation of the [warning] devices.' Thus, * * * §§ 646.214(b)(3) and (4) displace state and private decision-making authority by establishing a federal-law requirement that certain protective devices be installed or federal approval obtained. Indeed, §§ 646.214(b)(3) and (4) effectively set the terms under which railroads are to participate in the improvement of crossings. * * * § 646.214(b)(4), which covers federally funded installations at crossings that do not feature multiple tracks, heavy traffic, or the like, explicitly notes that railroad participation in the initial determination of 'the type of warning device to be installed' at particular crossings is subject to the Secretary's approval. * * * In short, for projects in which federal funds participate in the installation of warning devices,[2] the Secretary has deter-

---

**2.** The definition of warning devices provided in the federal regulations states, in relevant part:

mined the devices to be installed and the means by which railroads are to participate in their selection. The Secretary's regulations therefore cover the subject matter of state law which * * * seeks to impose an independent duty on a railroad to identify and/or repair dangerous crossings." Id., at 1741.

The question in this case with respect to the grade crossing claim is whether Defendants have established the preconditions for the application of the above-stated regulations. Defendants rely on an affidavit from the State Traffic Engineer for the Alabama Highway Department, Paul Weldon. The affidavit indicates that the "signs and pavement markings [on Butler County Road 30] were approved and authorized by the Federal Highway Administration, and federal funds were expended for the design, placement and payment of these signs and pavement markings." [Affidavit of Paul Weldon attached to Motion for Summary Judgment of Amtrak, CSX and Cheatwood filed August 25, 1993]. These undisputed facts establish that federal funds participated in the installation of the warning devices at the crossing in issue. Thus, Plaintiff's negligence and wantonness claims are preempted only insofar as such claims are based on the Defendants' failure to provide and maintain adequate warning devices at the crossing. Accordingly, summary judgment on this issue for Defendants is appropriate.

## B. VEGETATION CLAIM

■ The issue of whether federal law *preempts* Plaintiff's claim based on the Defendants' alleged failure to remove vegetation from around the crossing was not briefed by either side. However, because the parties have raised the vegetation issue on other grounds, the Court is inclined to partially dispose of this issue.

■ Under 49 C.F.R. § 213.37 (1992), railroad track owners must keep **vegetation on, or immediately adjacent to,** the tracks under control. On this issue the Eleventh Circuit Court of Appeals has stated: "Because the Secretary has chosen to regulate vegetation, Congress explicitly has preempted all state regulation in this area." *Easterwood v. CSX Transportation, Inc.,* 933 F.2d 1548, 1554 (11th Cir.1991), *aff'd,* —— U.S. ——, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). However, because these regulations apply only to vegetation on, and immediately adjacent to the railbed, states are free to regulate vegetation beyond the area contemplated by 49 C.F.R. § 213.37. *Missouri Pacific Railway Co. v. Railroad Comm. of Texas,* 833 F.2d 570 (5th Cir.1987). Accordingly, Plaintiff's claims of negligence and wantonness relating to **vegetation immediately on or adjacent to** the railroad track are preempted and summary judgment will enter as to Defendant CSX; but to the extent that Plaintiff's claims relate to vegetation on Defendant Butler County's right-of-way near the railroad tracks, beyond the area covered by the federal regulation, these claims are not preempted, and State tort law will apply as to the County's alleged negligence and wantonness.

## IV. NEGLIGENCE

Beyond those claims addressed above, Plaintiff seeks to impose negligence liability against Defendants based upon the alleged (1) failure of the County to remove vegetation near the tracks which obstruct a motorist's view of an oncoming train and (2) failure of CSX, Amtrak and Cheatwood to sound the

"(i) Passive warning devices means those types of traffic control devices, including signs, markings and other devices, located at or in advance of grade crossings to indicate the presence of a crossing but which do not change aspect upon the approach or presence of a train."
23 C.F.R. § 646.204(i). In the present case, passive warning devices including the following were present at the crossing in question:
"1. A yellow and black railroad advance warning sign located approximately 1,010 feet from the crossing;

"2. A yellow diamond-shaped "Stop Ahead" sign located 710 feet from the railroad crossing;
"3. A red Alabama stop sign located adjacent to the railroad crossing;
"4. A crossbuck sign located adjacent to the crossing.
[Affidavit of J.D. Darby attached to Brief in Support of Motion for Summary Judgment filed by Defendant Butler County Commission on August 25, 1993].

train whistle before entering the crossing. There are no applicable federal regulations.

 Under Alabama law, "[t]he basic elements of any negligence action are: 1) an obligation owed by the defendant to the plaintiff, 2) a breach of the standard of care applicable to that obligation, 3) causation, and 4) damage." *Hilliard v. Huntsville Elec. Util. Bd.*, 599 So.2d 1108, 1110 (Ala. 1992) [quoting *Maharry v. City of Gadsden*, 587 So.2d 966, 968 (Ala.1991)]. Furthermore, Plaintiff bears the burden of proof in establishing these elements of negligence. See *Brown v. Autry, Greer & Sons, Inc.*, 551 So.2d 1049, 1050 (Ala.1989).

Defendants, in moving for summary judgment, submit affidavits and photographs of the approach to the scene of the accident. Defendants first submit the affidavit of Alabama State Trooper J.D. Darby, which states: "I recall that when I arrived at the accident scene it was daytime, there was no fog, rain or smoke and visibility was good." [Affidavit of J.D. Darby attached to Brief in Support of Motion for Summary Judgment filed by Defendant Butler County Commission on August 25, 1993]. Darby further states: "I affirm that there was no underbrush, trees or foliage to obstruct Robert Day Lewis' view from his vehicle as he approached said crossing on February 16, 1991 * * *." [Id.] Defendants also submit the affidavit of train engineer M.L. Cheatwood, which states that as the train was approaching the crossing, he was "blowing the whistle, ringing the bell, and had the headlights on." [Affidavit of M.L. Cheatwood attached to Motion for Summary Judgment filed July 1, 1992, at 1–2]. Additionally, Defendants offer the affidavit of Thomas Laurance Stennis, III, who was a passenger on the train. Stennis states that he heard the train whistle blowing just before the train collided with Lewis' car. [Affidavit of Thomas Laurance Stennis, III, attached to Motion for Summary Judgment filed July 1, 1992, at 1]. Finally, Defendants offer the affidavit of Carla Womack. Plaintiff previously offered an affidavit of Ms. Womack made on July 20, 1992, in which she stated: "On the occasion of this accident, I don't remember hearing a train whistle blow its whistle and I did not know a train was present until I saw it enter the intersection and strike the vehicle in front of me." [Affidavit of Carla Womack attached to Plaintiff's Response to Defendants' Motion for Summary Judgment filed July 20, 1992]. Defendants now offer a second affidavit in which Ms. Womack further states: "I am not saying that the train did not blow its whistle. The train could have sounded its whistle and I didn't hear it, or I don't recall hearing it. I also do not recall hearing the train strike the automobile, although I saw the accident." [Affidavit of Carla Womack attached to Defendants Amtrak, CSX and Cheatwood's Motion for Summary Judgment, supra, at 2].

Although Defendants do not specifically note the significance of these affidavits, the Court is of the opinion that these statements tend to show the existence of a material issue of fact, whether the warning whistle was sounded in a timely fashion.

To meet this burden, Plaintiff offers a number of affidavits, some of which were previously submitted in her response to Defendants' Motion for Summary Judgment filed July 1, 1992. Plaintiff first offers the July 20, 1992 affidavit of Carla Womack discussed above. Next, Plaintiff offers the affidavit of Jim Hammonds, who lives on County Road 30 in Butler County, west of the railroad crossing where the collision occurred. Mr. Hammonds states that, for "several years" prior to the accident, he observed "dangerous conditions" at the railroad crossing. [Affidavit of Jim Hammonds attached to Plaintiff's Response to Defendants' Motion for Summary Judgment filed July 20, 1992, at 1]. He also states that it was impossible for a car approaching from the east to see a train approaching from the north "because of the height of the bank on the north side of the crossing and the vegetation present there." [Id.] This condition, according to Mr. Hammonds, created a situation where one "could not clearly see an approaching train until you pull upon the tracks." [Id., at 2].[3]

---

**3.** As previously indicated by this Court: "While Hammonds' statement that the crossing was

Plaintiff also offers the affidavit of Joe Shealy, a licensed surveyor. Mr. Shealy's affidavit includes a copy of the surveying work done by him and his staff, representing distances and elevations of various points of interest at the accident scene. [Affidavit of Joe Shealy attached to Plaintiff's Amended Response filed September 10, 1993]. Shealy's affidavit, with his map attached, shows a view of the train from all points on the highway within 230 feet of the intersection. The view of the oncoming train is an issue.

Finally, Plaintiff offers the affidavit of Terry Mullins, an Investigator with the Butler County Sheriff's Department. Mullins previously gave an affidavit in this case in which he identified photographs of the accident scene attached thereto. [Affidavit of Terry Mullins attached to Defendant Butler County's Motion for Summary Judgment, supra]. Plaintiff now offers a second affidavit in which Mullins states:

> "I did not take any of the photographs that were attached to my Affidavit nor did I make any determination of what angles or distances said photographs were taken. I did not take any measurements to determine any distances. Thus, although the pictures attached to my Affidavit appear to accurately reflect what appears on the photograph, there are places on Butler County Road 30 which a driver traveling west could not see an oncoming train traveling south and I cannot accurately testify at what distance from the railroad track a driver would have a clear line of sight to an oncoming train." [Affidavit of Terry Mullins dated September 10, 1993, attached to Plaintiff's Amended Response, supra].

Defendants filed an objection to the Court's consideration of Mullins' statements that "there are places on Butler County Road 30 where a driver traveling west could not see an oncoming train," and further requests the Court to strike Mullins' September 10, 1993 affidavit. Defendants contend that Mullins' second affidavit is inadmissible

as evidence and cannot be used in opposition to Defendants summary judgment motions on the grounds that such is (1) conclusionary, (2) does not state where on County Road 30 a driver could not observe an oncoming train, (3) is not specific in time and place, and (4) does not set forth facts admissible into evidence in violation of Rule 56(e), *Federal Rules of Civil Procedure.*

■ The Court agrees with Defendants that Mullins' statement that "there are places on Butler County Road 30 where a driver traveling west could not see an oncoming train" is not specific in time or place. The statement does not establish where and when such observations were made. The statement also fails to show that such observations were made at a time when the property was in a substantially similar condition to that of the day of the accident. However, these observations are relevant as to the weight of Mullins' observations. Thus, the Motion to Strike filed herein September 17, 1993, by Defendants Amtrak, CSX and Cheatwood is due to be DENIED.

■ As previously indicated by this Court, if the alleged negligence by said Defendants was based **solely** on allegations of permitting excessive vegetation to grow around the crossing, Defendants, as a matter of Alabama law, might be entitled to summary judgment.

> "[U]nnecessary obstructions such as trees, bushes, shrubs and tall grass, growing on a railroad right of way, which obstruct the view of a traveler approaching a grade crossing, do not constitute actionable negligence." *Alabama Great S.R.R. v. Johnston,* [281 Ala. 140] 199 So.2d 840, 844 (Ala.1967).

However, Defendants have "an affirmative duty to put and keep railroad approaches and crossings in proper repair for the use of the traveling public," *Western Railway v. Still,* 352 So.2d 1092, 1095 (Ala.1977), and to "exercise ordinary care in the operation of its

'dangerous' was conclusory, his additional statements, that the height of the bank and the vegetation prevented one from seeing an approaching train, are specific factual assertions pertinent to

a possible factual conclusion that [one or more Defendants] maintained a dangerous condition." [Order of November 20, 1992, at 9].

train." *Johnston,* 199 So.2d at 844.[4] In considering whether Defendants breached any of these duties, a jury may consider the presence of vegetation as a **factor** in determining negligence. Id.

In the present case, Plaintiff has presented evidence that, if believed, would establish that a car approaching the crossing in question could not see an oncoming train because of obstructions created by vegetation growing adjacent to the railroad track. Even though Defendants present photographic evidence that purports to show the absence of excessive vegetation, Defendants fail to provide any evidence indicating the distances and angles at which these photographs were taken. Additionally, the statement by Ms. Womack, that she does not **remember** hearing a train whistle or bell, creates a reasonable inference that the train may not have sounded its whistle or bell near the crossing.[5] Also, there is no evidence before the Court on whether Ms. Womack, based on the circumstances at the time, should have reasonably heard the train's whistle or bell if it was in fact sounded.

 While Defendants submit several affidavits asserting that the view of the crossing was unobstructed and that the train did sound its bell and whistle, these opposing affidavits create a classical factual dispute. This Court cannot consider quality or weight of the evidence issues on motion for summary judgment, as these determinations are properly left for the jury. *Rollins v. Tech-South, Inc.,* 833 F.2d 1525 (11th Cir.1987)

[quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)]. Therefore, because there are genuine issues of material fact remaining on the negligence claim, Defendants Amtrak, CSX and Cheatwood's Motion for Summary Judgement is due to be denied as to the issue of negligence, independent of any claims of contributory negligence.

 As to Defendant Butler County's Motion for Summary Judgment, this Court is of the opinion that Plaintiff has failed to state a cause of action for negligence against Butler County on the vegetation claim. Plaintiff seeks to impose negligence liability on Defendant for its allowing vegetation to grow near the railroad track which allegedly obstructed Lewis' view of an approaching train. As stated above, under Alabama law, unnecessary vegetation growing on a railroad right of way, which obstructs a traveler's view of a grade crossing, does not, within itself, constitute negligence. See *Alabama Great S.R.R. v. Johnston,* 281 Ala. 140, 199 So.2d 840, 844 (1967). Therefore, as a matter of law, Defendant Butler County is entitled to summary judgment on this issue.

## V. Contributory Negligence

Defendants Amtrak, CSX and Cheatwood alternatively base their motion for summary judgment on acts of alleged contributory negligence by Lewis. Defendants will bear the burden of proof on contributory negligence and proximate cause at trial and, therefore, must establish the absence of gen-

---

4. An engineer or operator of a railroad locomotive has a duty to blow a horn or whistle or ring a bell while approaching a railroad crossing. Ala.Code § 37–2–81(1) (Supp.1991). This Court in its prior Order of November 20, 1992 held that this statutory duty to ring a bell or whistle is not applicable to Defendant Amtrak pursuant to Ala. Code § 37–2–2 (Supp.1991). However, this exclusion from statutory coverage does not exempt Amtrak from the common-law duty to "exercise ordinary care in the operation of its train." *Johnston,* 199 So.2d at 844.

5. Defendants cite Alabama cases for the proposition that there is no substantial conflict that the bell or whistle was sounded. However, in those cases the claimants positively testified that they heard no bell or whistle. In the present case, Ms. Womack states in her affidavit: "I am not saying that the train did not blow its whistle.

The train could have sounded its whistle and I didn't hear it, or I don't recall hearing it." [August 25, 1993 Affidavit of Carla Womack, supra]. Her statement creates an inference in this case that the whistle may not have sounded at all. "While generally positive testimony (such as I heard the whistle) is better than negative testimony (such as I did not hear the whistle) the district court may not accept positive testimony to the exclusion of negative testimony on a motion for summary judgment. It is a credibility question whether one witness' memory is more reliable than another witness' memory, and such credibility determinations are not to be made on a motion for summary judgment." *Easterwood,* 933 F.2d at 1560 n. 14 [citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)].

uine issue of any material fact in order to succeed on their motions.

Defendants first claim that Lewis was contributorily negligent as a matter of law because, while under the influence of alcohol, he failed to stop at the railroad crossing. This, according to Defendants, violated Lewis' common law duty to "stop, look, and listen" at a railroad crossing and his statutory duty to stop at an Alabama stop sign.[6] It is undisputed that Lewis passed warning signs at 1010 feet and 710 feet from the intersection and failed to heed the stop sign and drove his car directly into the path of the train. The only evidence that Lewis attempted to stop is the 58 feet of skid marks he made in an attempt to stop his car before being struck by the train. [Affidavit of J.D. Darby, supra]. Plaintiff's own witness, Carla Womack, states that the car Lewis was driving "was slowing but * * * never did come to a complete stop." [July 20, 1992 Affidavit of Carla Womack, supra]. Nevertheless, these undisputed facts, alone, may not establish that Defendants are entitled to judgment as a matter of law.

In *Burlington N.R.R. v. Whitt*, 575 So.2d 1011, 1021 (Ala.1990), the Alabama Supreme Court required proof of the elements of contributory negligence as alleged to include knowledge and appreciation of danger as well as the failure to exercise due care. Applying this standard in *Burlington*, the Alabama Supreme Court found that contributory negligence was a jury question, even though the undisputed facts, as here, established that the decedent did not stop prior to the collision with the train. Id. Indeed, both the Alabama Supreme Court and the Eleventh Circuit Court of Appeals have recognized that Alabama's duty to stop, look, and listen "is not hard, fast, or absolute in its application." *Stallworth v. Illinois Cent. Gulf R.R.*, 690 F.2d 858 (11th Cir.1982) [quoting *Alabama Great S.R.R. v. Johnston*, 281 Ala. 140, 199 So.2d 840, 848 (Ala.1967)]. Instead, the courts have required that those approaching a railroad crossing "use ordinary care and prudence to discover the approach of trains."

Id. [quoting *McCullough v. Louisville & N.R.R.*, 396 So.2d 683, 686 (Ala.1981)]. Some of the discussions about a distinction between assumption of risk and contributory negligence which appear in various cases for a period of some years have been confusing in that they seem to imply that contributory negligence and assumption of risk as defenses were either identical or very nearly identical. The Supreme Court in the case of *Slade v. City of Montgomery*, 577 So.2d 887, 892–893 (Ala.1991), seemed to clarify the distinction made.

The original cases on contributory negligence in Alabama were uniform in saying that contributory negligence is negligence (or a want of due care) on the part of the plaintiff which proximately contributed to the alleged injury. The *Slade* Court distinguishes this from a more complicated definition of contributory negligence in another type case as follows:

> "Slade argues that the trial court failed to correctly define 'contributory negligence' for the jury and that the evidence presented at trial did not merit an instruction on contributory negligence.
>
> "In the present case, the record reflects that that trial court defined contributory negligence for the jury in the following manner: 'Contributory negligence, of course, is negligence on the part of the plaintiff, Mr. Slade, which proximately contributed to the alleged injury.' Slade asserts that contributory negligence should have been defined for the jury as consisting of: (1) knowledge by the plaintiff of a dangerous condition; (2) the plaintiff's appreciation of the danger; and (3) thereafter, the plaintiff's failure to exercise reasonable care.
>
> "In *Cooper v. Bishop Freeman Co.*, 495 So.2d 559 (Ala.1986), **overruled on other grounds**, *Burlington N.R.R. v. Whitt*, 575 So.2d 1011 (Ala.1990), we pointed out that this court has continued to recognize a distinction between assumption of risk and contributory negligence as defenses to actions in simple negligence. We further

---

**6.** See Ala.Code §§ 32–5A–31 and 32–5A–112 (1975). *Stallworth v. Illinois Central Gulf R.R.*,

690 F.2d 858 (11th Cir.1982).

noted in *Cooper* that, in Alabama, the term 'assumption of risk' has been used to describe a form of contributory negligence applicable to factual situations in which it is alleged that the plaintiff failed to exercise due care by placing himself or herself into a dangerous position with appreciation of a known risk. The elements of [such] assumption of risk are: (1) knowledge by the plaintiff of the condition; (2) appreciation by the plaintiff of the danger under the surrounding conditions and circumstances; and (3) the plaintiff's failure to exercise reasonable care in the premises, and, with such knowledge and appreciation, the plaintiff's putting himself into the way of danger. *Baptist Medical Center v. Byars,* 289 Ala. 713, 271 So.2d 847 (1972). On the *other hand,* contributory negligence, in the context of actions in simple negligence, *is negligence on the part of a plaintiff that proximately contributes to the plaintiff's injury* [emphasis added]. *Cooper,* supra.

"At trial, the city was not attempting to make use of the assumption of risk defense; rather, the city was attempting to assert the affirmative defense of contributory negligence as a defense to a simple negligence action. The record reveals that Slade testified that, although he was walking in the gutter at the edge of the street, he had no reason to feel that he needed to be careful. Furthermore, the evidence revealed that Slade occasionally mowed the grass around the location of the sewer grate and that Slade or other members of his family placed their garbage can on the curb directly above the sewer grate approximately twice each week. Although Slade was not under a duty to keep a vigilant watch for unknown defects and obstructions that cannot be observed by the use of ordinary care, he was required to exercise such ordinary care as the situation on the whole would lead a reasonably prudent person to observe in respect to conditions immediately ahead. See *Jacks v. City of Birmingham,* 268 Ala. 138, 105 So.2d 121 (1958). In view of the above, we find no error in the trial court's instructions to the jury on the issue of contributory negligence." *Slade,* supra, at 892–893.

■ This Court, therefore, concludes that the test for contributory negligence as an affirmative defense to a simple negligence action as in the above-styled case is whether or not the Plaintiff's intestate, Mr. Lewis, acted as a reasonable person with due care and, if not, whether or not his lack of due care (his negligence) proximately contributed to his injury. See also, *Sprouse v. Belcher Oil Co.,* 577 So.2d 443, 444 (Ala.1991); *Gulledge v. Brown & Root,* 598 So.2d 1325 (Ala. 1992). In *Gulledge,* the Court noted that, although the question of the existence of contributory negligence is normally one for the jury, "contributory negligence may be found to exist as a matter of law when the evidence is such that all reasonable people must reach the same conclusion * * * " that the plaintiff was negligent (or failed to exercise reasonable care) and that such negligence was a proximate cause of the injury. *Gulledge,* supra, 598 So.2d at 1326–1327. "If Plaintiff had knowledge of facts sufficient to warn a man of ordinary sense and prudence of the danger to be encountered, and of the natural and probable consequences of his own conduct in the premises, then he was guilty of negligence if he failed to exercise ordinary care to discover and avoid the danger and the injury." *Gulledge,* supra, 598 So.2d at 1327, quoting *Alabama Power Co. v. Mosley,* 318 So.2d 260, 263, quoting *Dwight Mfg. Co. v. Word,* 200 Ala. 221, 225, 75 So. 979, 983 (1917).

■ While the general rule on this "ordinary care" requires that one stop, look, and listen at railroad crossings, "an exception arises when the evidence is such that a reasonable jury could determine that some peculiar environment or hazardous condition made the failure to stop not negligent." *Stallworth,* supra, 690 F.2d at 865 [citing *Alabama Great S.R.R. v. Johnston,* 281 Ala. 140, 199 So.2d 840 (1967) ]. Here, Plaintiff argued that she has presented evidence that, if believed, would establish that one could not see an approaching train without pulling onto the tracks. See *Callaway v. Adams,* 40 So.2d 73 (Ala.1949) (special conditions of topography, grade, and course of highway prevented notice of train's presence until on track). That theory has apparently been

abandoned or so discredited, as hereinafter pointed out, as to be of no reasonable credibility. There was no substantial evidence from which a reasonable jury could find that Lewis was not negligent in failing to stop before the crossing. The 58–foot skid mark made by Lewis' car is undenied evidence that he had notice of the danger before he reached the tracks. *Alabama Great So. R.R. v. Johnston,* supra, and *Callaway v. Adams,* supra, are, therefore, inapposite. See also the pictures and the testimony of Deputy Sheriff Mullins attached to the brief in support of the Motion for Summary Judgment filed August 25, 1993, by Defendant County and the sketch of the scene of the accident made by Plaintiff's own surveyor, Joe Shealy [see Shealy Affidavit attached to Plaintiff's Amended Opposition filed September 10, 1993, to Motion for Summary Judgment]. The sketch and pictures of the warning signs show clearly that one approaching the railroad along County Road 30, as was Plaintiff's intestate on the day in question, would, upon reaching a point 234 feet from the crossing, be able to see the train.

Defendants next argue that Lewis was contributorily negligent as a matter of law because he was intoxicated at the time of the accident, in violation of Ala.Code § 32–5A–191. In support of this claim, Defendants present unrebutted evidence that Lewis had been drinking the day of the accident and that his blood alcohol level was .162%. [Affidavit of M.T. Barnhill, Jr., Ph.D. attached to Motion for Summary Judgment, supra, at 2].[7]

■ Once the defendants make a prima facie showing of contributory negligence, the plaintiff must rebut that showing by offering substantial evidence that plaintiff acted with reasonable care. The record in the case at bar is bare on the question of the defensive processes of the Plaintiff's intestate except for the fact that he did skid for 58 feet before the train hit him. This is not substantial evidence that Plaintiff's intestate acted with ordinary care. It does show that, at some point prior to running the stop sign at the railroad track, he did have consciousness

that the train was in the area and that he should have followed directions of the warning signs to avoid injury. The associated undenied evidence of the warning signs, well back from the 58–foot mark, and of Mr. Lewis' drunkenness show clearly that Mr. Lewis ignored the legally prescribed warnings displayed on the highway and proceeded in his intoxicated condition for far too long and until his injury was a preconceived certainty.

■ A concurrence of these undenied facts, in this Court's opinion, establishes that Lewis was *negligent* as a matter of law. However, this negligence is not a bar to recovery unless it is shown to be a *proximate contributing cause* of the collision. *Hallman v. Summerville,* 495 So.2d 626, 627 (Ala. 1986).

This Court notes that the Plaintiff in the above-styled cause accuses Defendant County of not maintaining a clear right-of-way at the intersection, the site of the fatal accident in question, and accuses Defendant CSX Railroad with not having sounded its whistle at its approach to the railroad crossing.

The evidence is undenied that approaching the intersection in question the Plaintiff's intestate passed a yellow and black railroad advance warning sign displayed 1010 feet from the crossing, then passed a yellow diamond-shaped "stop ahead" sign 710 feet from the crossing and drove out on the railroad tracks past a railroad crossbuck sign and a State Highway intersection stop sign into the path of the advancing train. It is also undenied that, at the time the Plaintiff's intestate committed these acts, his blood alcohol content was .162 percent. The Court notices that driving under the influence of alcohol is prohibited by CODE OF ALABAMA [1975], § 32–5A–191, which created an undenied presumption that Plaintiff's intestate was violating the law and was, therefore, prima facie negligent at the time of the accident; that he failed to stop at a State of Alabama stop sign in violation of §§ 32–5A–112 and 32–5A–31 of the CODE OF ALABAMA; and that, upon

---

7. CODE OF ALABAMA [1975], § 32–5A–194(b)(3) provides: "If there were at that time 0.10 percent or more by weight of alcohol in the person's blood, it shall be presumed that the person was under the influence of alcohol."

approaching the railroad crossing, he failed to stop, look and listen as required by the crossbuck sign at the track. All this evidence is undenied.

■■■ The courts have ruled that, generally, a common-law duty exists for one to stop, look and listen before entering on a train track at an intersection. *Southern Railway Co. v. Carter*, 276 Ala. 218, 160 So.2d 628 (Ala.1963); *Stallworth v. Illinois Central Gulf Railway*, 690 F.2d 858 (11th Cir.1982). The court also notes that, generally speaking, one who is driving under the influence of alcohol or one who runs a stop sign is considered to be negligent per se. *Simpson v. Glenn*, 264 Ala. 519, 88 So.2d 326; *Carroll v. Deaton*, 555 So.2d 140, 141 (Ala.).

■■■ While any one or more of these violations would constitute negligence per se or be prima facie evidence of negligence, there is in this case no evidence that the Plaintiff's intestate was not negligent when he passed the two advance railroad warning signs or when he drove past the crossbuck sign and the stop sign out onto the tracks in front of the oncoming train. In the opinion of this Court, Plaintiff's intestate clearly was contributorily negligent in disregarding while under the influence of alcohol all of the warnings and the stop signs in question and in not discovering a train which he could have seen for over 186 feet or 62 yards before his skid marks began, according to Shealy's map offered by Plaintiff. The Plaintiff is unable to offer any evidence that her intestate was not negligent or that the presumption of negligence is not applicable to control this case. Negligence, of course, depends upon all of the circumstances, but the additional circumstances about the case do not help the Plaintiff. The Plaintiff's own surveyor's sketch shows there was a clear view of the top of the train from the highway for 234 feet before the Plaintiff's intestate entered the crossing. This was confirmed by the testimony of Deputy Sheriff Mullins attached to Defendant County's brief filed August 25, 1993. Testimony that no whistle was blown is equivocal from Ms. Womack and is unequivocally denied by the engineer and a passenger from

the train. That the Plaintiff's intestate did finally see the train before the crossing is reasonably confirmed by the evidence that he did put on his brakes and skidded the last 58 feet before the train struck him in the intersection. Plaintiff's intestate was proceeding after several warnings at such a speed that he was unable to stop within the last 58 feet before the intersection.

Defendants cite the recent Alabama Supreme Court decision in *Middaugh v. City of Montgomery*, 621 So.2d 275 (Ala.1993), 621 So.2d 272, for the proposition that summary judgment should be granted on the issue of contributory negligence because there is no evidence that Lewis ever looked up the railroad track or attempted to do so before the collision and that Lewis' negligence was the sole proximate cause of the accident and his death. This Court finds, for reasons discussed more fully in footnote 9 hereof, that no reasonable juror could find that Lewis' contributory negligence was not the sole proximate cause of the accident and death here in question.

## VI. Wantonness

Defendants also move for summary judgment on Plaintiff's wantonness claim, stating that "Plaintiff has presented no evidence whatsoever to establish that Defendant[s] acted wantonly." [Defendant Butler County's Brief, supra, at 7; Defendants Amtrak, CSX and Cheatwood's Brief, supra, at 12 n. 8]. Plaintiff would bear the burden of proof on this issue at trial and must now establish the existence of a genuine issue of material fact in order to defeat Defendants' Motions for Summary Judgment. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

To meet this burden, Plaintiff submits the affidavits of Carla Womack (July 20, 1992) and Jim Hammonds, discussed in Part IV. Mr. Hammonds' affidavit, in addition to the statements already mentioned, states that in 1989 or 1990 he had and reported by telephone, a "near miss" at the railroad crossing in question to some unidentified person, and that no improvements have been made to the crossing since then which improved visibility. [Affidavit of Jim Hammonds, supra, at 2].[8]

---

8. Hammonds' affidavit states that after his near miss he telephoned Defendant CSX Transporta-

The Court must consider now whether the two affidavits offered are sufficient to create a genuine issue of material fact concerning wantonness. Under Alabama law, wanton conduct is the "conscious doing of some act or the omission of some duty (by one who has) knowledge of the existing conditions, and (who is) conscious that from the doing of such act or omission of such duty injury will likely or probably result." *Rommell v. Automobile Racing Club of America, Inc.*, 964 F.2d 1090, 1096 (11th Cir.1992) [quoting *Copeland v. Pike Liberal Arts School*, 553 So.2d 100 (1989) ]. When a person having knowledge of existing conditions and circumstances and being conscious that his conduct will likely result in injury, yet "acts with reckless indifference or disregard of the natural or probable consequences of his act or failure to act," his conduct is wanton. Id. Knowledge of conditions and consciousness of the likelihood of injury may be inferred. *Stallworth v. Illinois Cent. Gulf R.R.*, 690 F.2d 858, 863 (11th Cir.1982) [citing *Myers v. Evans*, 255 So.2d 581, 583 (Ala. 1971)]. Furthermore, what constitutes wanton conduct depends on the facts of each case, and must be based upon more than mere negligence. *Rommell*, 964 F.2d at 1096. The most that can be reasonably inferred adverse to the Defendants is that no whistle was blown. There was no evidence of knowledge that any person would ignore the four warning signs and enter the crossing or of knowledge that any person was driving under the influence of alcohol.

In order to prevail on the wanton conduct claim, Plaintiff must show that Defendants had knowledge of dangerous conditions at the crossing, and that Defendants acted with reckless indifference or disregard of the likelihood of injury. To prevail against Defendants Amtrak, CSX and Cheatwood, "the plaintiff must show knowledge and wanton actions by the crew charged with the operation of the train." *Radford v. Seaboard System R.R., Inc.*, 828 F.2d 1552, 1553 (11th Cir.1987) (citations omitted). Applying that rule to this case, there is no evidence that the railroad crew knew of the alleged dangerous conditions at the crossing or that the conditions were dangerous, and there was no evidence of reckless indifference, or likelihood of injury prior to Lewis' illegal disregard of obvious warnings. The testimony of Ms. Womack, if believed, establishes only that she did not recall hearing any whistle as the train approached the crossing. This testimony may represent evidence of negligence but not substantial evidence of wantonness as required to defeat summary judgment. Additionally, the Supreme Court's *Middaugh* ruling, that the driver in that case, while driving under the influence and ignoring a stop sign, thereby displayed negligence which, although there were some arguments to the contrary, was the *sole proximate cause* of that accident, mandates that this Court find that Plaintiff's intestate's negligence, independent of Defendants' negligence or wantonness, if any, was the sole proximate cause of subject accident.[9] This

---

tion, spoke with a man who answered the phone, and "informed him of the dangerous condition of that particular crossing," and that the man responded that he "would report it to the appropriate authorities with the railroad who could alleviate the problem." [Hammonds Affidavit, supra, at 2]. Defendants objected to these statements and moved to strike this portion of Hammonds' affidavit. This Court in its November 20, 1992 Order found that such statements were hearsay and not admissible to prove that any agent of any Defendant knew that the crossing was dangerous. Additionally, Hammonds' statement to whomever made was an inadmissible conclusion at best. Thus, such statements will not be considered by this Court in ruling on the Defendants' summary judgment motions.

9. As recently as May 14, 1993, the Supreme Court of Alabama recognized that there are cir-

cumstances justifying the grant of summary judgment on the basis of a plaintiff's negligence. In *Middaugh v. City of Montgomery*, supra, 621 So.2d at 278, the Alabama Court affirmed a summary judgment for all defendants against all plaintiffs when the plaintiffs' " * * * driver (Meadows), being under an influence of an alcoholic beverage, failed to yield the right-of-way to the Freightliner tractor-trailer truck, (and) entered the intersection causing the tractor-trailer truck to collide with the * * * (automobile driven by Meadows) * * *." The Court pointed out that, "The Middaughs offered no evidence to rebut the evidence that (the driver) failed to heed the stop sign and drove his car directly into the path of McGhee's truck." There was some evidence which the Supreme Court found was not substantial, which plaintiffs argued had presented material factual issues (1) whether evidence of the speed of the truck contributed to the acci-

Court is of the opinion that reasonable jurors could not disagree with the conclusion that none of the Defendants was wanton and that any Defendant's wantonness or negligence, if any, was not a proximate cause of the accident here considered and, therefore, finds that summary judgment is proper against Plaintiff and for all Defendants.

Additionally, Plaintiff has presented no admissible evidence that Defendant Butler County had knowledge of the alleged dangerous condition of the crossing. Thus, Plaintiff has failed to establish the existence of a genuine issue of material fact required to defeat Defendant Butler County's Motion for Summary Judgment.

An Order will be entered in accordance with this Opinion.

dent, (2) whether an advertising sign which might have blocked Meadows' view of the approaching truck was a contributing factor, and (3) whether the driver of the plaintiffs' automobile was under the influence of alcohol. While contributory negligence was not pleaded, the Supreme Court found:

"The overwhelming weight of the evidence, however, shows that Meadows (Plaintiffs' driver) had been drinking alcoholic beverages before he drove that evening, that he was intoxicated at the time he drove, and that he failed to heed a stop sign and drove into the path of McGhee's vehicle. * * * [W]e must conclude that the Middaughs failed to present substantial evidence to rebut the prima facie showing that the accident was *caused solely* by Meadows' (plaintiffs' driver) failure to observe the stop signs" [emphasis added]. *Middaugh,* 621 So.2d at 280–281.

This Court is of the opinion that, while differences exist between the cases, the *Middaugh* case is controlling of the instant case as to both contributory negligence and sole proximate cause. In *Middaugh,* as here, the driver Lewis [Plaintiff's intestate] disobeyed a stop sign, thereby providing Defendants with prima facie evidence of his negligence. Also, as here, there was substantial evidence (a statutory inference) that Lewis was under the influence of alcohol. The Alabama Supreme Court in *Middaugh* found that plaintiffs' driver was negligent and that his (con-

tributory) negligence was the sole proximate cause of the accident. The instant case is more favorable to the Defendants than *Middaugh* as the photographs in the instant case show clear visibility of not only the stop sign, but also the warning signs at 1010 feet and 710 feet and the crossbuck sign at the intersection. Additionally, there was in this case absolutely no evidence that Plaintiff's intestate was not intoxicated, and there was undenied evidence that he had knowledge of his danger within 58 feet of the intersection, if not before. This evidence convinces this Court that any reasonable juror would find that Mr. Lewis was negligent and that said negligence was the sole contributing proximate cause of the accident and injury in this case. Accordingly, summary judgment as to the defense of contributory negligence should and will be entered for the Defendants and against the Plaintiff in this cause. Additionally, the finding in *Middaugh* indicates clearly that, since the drinking driver's failure to stop in that case was the sole proximate cause of that accident, then the drinking driver's failure in the *instant case* to heed the warning signs and stop at the stop signs was the sole proximate cause of the instant accident and that, if a Defendant in the instant case had been wanton or negligent, such wantonness or negligence could not have been a proximate cause of the subject accident. Accordingly, summary judgment must issue for all Defendants in this cause.