ILER
v.
**SEABOARD AIR LINE R. CO.**
No. 14790.

United States Court of Appeals,
Fifth Circuit.

June 30, 1954.

---

T. T. Molnar, Cuthbert, Ga., for appellant.

J. Willis Conger, Bainbridge, Ga., William H. Young, Jr., James H. Fort, Columbus, Ga., Young, Hollis, Fort & Drake, Columbus, Ga., Conger & Conger, Bainbridge, Ga., for appellee.

Before HUTCHESON, Chief Judge, and HOLMES, and BORAH, Circuit Judges.

BORAH, Circuit Judge.

This is an appeal in a tort action brought by plaintiff, Charles A. Iler, to recover damages for personal injuries sustained as a result of the alleged negligence of the defendant Seaboard Air Line Railroad Company in the operation of its train which struck the car plaintiff was driving while on a public crossing in the municipality of Cuthbert, Georgia. In accordance with the Georgia practice of pleading, the complaint alleged specific acts of negligence. By answer, each of these was denied and the defendant also pleaded that the plaintiff was guilty of contributory negligence, and further, that the negligence of plaintiff was the sole and proximate cause of the collision. The case was tried to a jury, and at the conclusion of plaintiff's evidence the court on motion of defendant directed a verdict in its favor. From judgment thereon plaintiff appeals.

The defendant corporation is a common carrier operating a line of railroad which passes through the City of Cuthbert, Georgia. In Cuthbert its tracks cross College Street, a four lane thoroughfare which is part of State Highway Number 50 and Federal Highway Number 82. At this crossing defendant's tracks run in a north-south direction and the highway runs east and west. There was a blinker signal system at this crossing. One part of this automatic warning device (blinker and bell) was located thirty feet north of the center line of College Street, and twelve feet east of the center line of the tracks and it was in good order. When working the red blinker lights could be seen by motorists in College Street for a distance of 700 feet and the bell could

be heard at least 300 feet. About 686 feet east of the intersection a driveway leads from the north side of College Street to the campus of Andrew College.

On the evening of October 25, 1952, after dark, plaintiff entered College Street from the campus driveway and drove west. When he entered College Street the red blinker lights were flashing and were clearly visible from that point. At this time a freight train was approaching the crossing at a speed of from 10 to 15 miles per hour and several automobiles had come to a stop on College Street on both sides of the track waiting for the train to pass. Two cars proceeding west immediately ahead of plaintiff drove up to the track, stopped momentarily, and then crossed in front of the train. A witness who was in a position to observe the movements of these cars thought at the time that the second car was "taking a chance" and when plaintiff attempted to cross the track he expected a collision and turned his head to avoid looking at it. Whether plaintiff stopped momentarily or drove around cars that had stopped for the train, as one witness testified, or whether he proceeded west on College Street without any apparent change in the speed of 20 to 25 miles per hour at which he was traveling, as testified to by others, there is and can be no doubt that he drove directly into the path of the train. Several witnesses testified that they did not hear any bell on the train engine. However, all witnesses agree that the bell on the blinker signal system was ringing.

The plaintiff suffering from amnesia as a result of the severe injuries sustained was unable to remember anything that happened from the time he turned out of the campus driveway and started toward the track. But he did testify with commendable candor that if he had stopped, looked, or listened, the accident would not have occurred.

The plaintiff's theory below was that the automatic signals were themselves the cause of the injury in that they began to function whenever a train or other railroad equipment passed over an electrical contact 1527 feet from the crossing and continued to function even though the train stopped before passing beyond the crossing; that very often people would drive up to that crossing with the bells ringing and the lights blinking and they would drive over despite these signals because they saw they could get over inasmuch as the train was not moving, and thus plaintiff says that the traveling public are lulled into a sense of security because they don't know when the signals are really signalling a train crossing and when they are just signalling. As we mentioned this was plaintiff's theory and a strange theory it is. At the trial plaintiff was asked if he had observed at some other time when two or three cars would be following each other and the blinkers would be working, and no equipment was in sight, what the automobiles would customarily be doing, and he replied, "Oh they'd just sit there, waiting for something." Other persons who were waiting at the crossing on the evening in question testified that they did not cross over when the signals were working and it seems preposterous to us to claim that the very warning device caused the danger because sometimes it gave warning when the train was not moving. Plaintiff was familiar with this railroad crossing. He knew when he turned out of the campus driveway that he was going to cross the railroad crossing that he had crossed many times before. He was familiar with the blinker system and had, on occasion, noticed the lights at this particular crossing blinking when either a train would be way down the track or there might have been a piece of equipment stopped on the track and he testified positively that he always stopped and looked when he saw the blinker lights blinking and had he done so on the evening in question the accident would not have happened. In the light of plaintiff's knowledge and his course of conduct the relevancy of what the public might have thought

about the blinker system or might have done is by no means apparent.

■■ The plaintiff contends that the negative testimony of his witnesses which was to the effect that they did not hear the bell on the engine was sufficient to authorize the jury to find that the bell on defendant's engine failed to ring on the engine's approach to the crossing, and that this point alone, without more, would have been sufficient to authörize the jury to return a verdict in his favor. The argument is not persuasive. If it be a fact that the engineer failed to ring the bell, this could not have been the proximate cause of the injury to plaintiff as all of his witnesses swore that a bell on the blinker signal system was ringing. Since it thus appears that plaintiff knew or by the exercise of ordinary care and prudence should have known by other means of the coming train, the omitted warning could not be deemed the cause of or to have contributed to the injury. Under the facts of this case we think it plain that the injury was not occasioned by this alleged omission of duty, and would have occurred if it had been fully and faithfully observed. The failure of an engineer to give the signals required by statute [1] will not impose liability on the railroad company to a person on or near the railroad track who is either aware of the approach of the train or who, through the exercise of ordinary care, should have discovered the approach of the train. Hunt v. Western & Atlantic Railroad, 49 Ga.App. 33, 174 S.E. 222; In Southern Ry. Co. v. United States, 5 Cir., 197 F.2d 922, this court citing two of its earlier decisions [2] recognized the well established Georgia rule that questions of negligence,[3] including contributory negligence, comparative negligence, and what negligence constitutes the proximate cause of the injury, are all questions of fact and will not be determined by the courts as a matter of law except in palpably clear, plain and undisputed cases. Again in Atlantic Coast Line R. Co. v. Key, 5 Cir., 196 F.2d 64, 66, we said: "It is only in the rare case where the evidence demands a finding that the plaintiff was, or in the exercise of due care should have been, aware of the approaching train that further progress in crossing the track may in itself be held a bar to recovery."

■ The defendant contends that this case falls within those plain and undisputed cases which should be determined by the court as a matter of law and that the rule announced in the Key case is controlling here and should be applied. We agree. The evidence here compels a finding that plaintiff knew or by the exercise of due care should have known of the approaching train and that in complete disregard for his own safety he voluntarily and negligently proceeded across the tracks and his action in so doing was the sole and proximate cause of his injury. Such a situation as con-

---

1. Ga.Code Ann. § 94–507 provides:
   "Within the corporate limits of cities, towns and villages the said railroad company shall not be required either to erect the blowpost hereinbefore provided for or to blow the whistle of its locomotives in approaching the crossing or public roads in said corporate limits, but in lieu thereof the engineer of each locomotive shall be required to signal the approach of his train to such crossing in said corporate limits by constantly tolling the bell of said locomotive, * * *."

2. Atlantic Coast Line R. Co. v. Key, 5 Cir., 196 F.2d 64; Stanaland v. Atlantic Coast Line R. Co., 5 Cir., 192 F.2d 432.

3. Ga.Code Ann. § 94–703 provides:
   "No person shall recover damages from a railroad company for injury to himself or his property where the same is done by his consent or is caused by his own negligence. If the complainant and the agents of the company are both at fault, the former may recover, but the damages shall be diminished by the jury in proportion to the amount of fault attributable to him."
   Ga.Code Ann. § 105–603 provides:
   "If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover. In other cases the defendant is not relieved, although the plaintiff may in some way have contributed to the injury sustained."

fronted plaintiff should have apprised any reasonably prudent and careful person that there was danger involved in such an undertaking. But he took the risk which, under the circumstances was an obvious one, and he must bear the consequence of failure.

We have carefully considered plaintiff's other contentions and these present no cause for reversal.

Accordingly, the judgment appealed from should be affirmed.

Affirmed.