United States Court of Appeals, Eleventh Circuit.

Nos. 94-9373, 94-9374.

Reba MICHAEL, Individually, and as Parent and Executrix of the Estate of Keith Lane Michael;  Kenneth Michael, Individually and as Parent of Keith Lane Michael, Plaintiffs-Appellants,

v.

NORFOLK SOUTHERN RAILWAY COMPANY, a Virginia Corporation doing business in Georgia, Defendant-Appellee.

Linda STEWART, Individually;  Terry L. Weaver, Individually, and as Parent of Angelia L. Weaver, Plaintiffs-Appellants,

v.

NORFOLK SOUTHERN RAILWAY COMPANY, a Virginia Corporation doing business in Georgia, Defendant-Appellee.

Feb. 6, 1996.

Appeals from the United States District Court for the Northern District of Georgia. (No. 1:93-00086-CV-ODE), Orinda D. Evans, Judge.

Before TJOFLAT, Chief Judge, CARNES, Circuit Judge, and FAY, Senior Circuit Judge.

FAY, Senior Circuit Judge:

This appeal arises from a summary judgment in favor of the defendant, Norfolk Southern Railway Company.  Norfolk was sued by representatives of an automobile driver and passenger who were killed in a collision with a Norfolk train.  The District Court ruled that the automobile driver was the sole proximate cause of the accident, and that the plaintiffs' state law negligence claims were preempted by federal law.  We REVERSE and REMAND for further proceedings consistent with this opinion.

I. BACKGROUND

On December 23, 1990, a train owned and operated by Norfolk collided with an automobile driven by Angelia Weaver.  Ms. Weaver

and her passenger, Keith Michael, died as a result of injuries sustained in the accident. The defendant contends that Ms. Weaver's automobile was travelling at a high rate of speed prior to the collision, but the plaintiffs presented evidence that the she was travelling at five to ten miles per hour. The defendant contends that at the time of the accident visibility was clear, but there is some evidence that the weather was extremely foggy. An employee of the defendant testified in his deposition that Ms. Weaver drove around the lowered warning gate on the wrong side of the road, but the plaintiffs presented evidence that this gate did not extend very far into Ms. Weaver's lane and that she entered the crossing in the proper lane of traffic.[1]

The defendants contend that Ms. Weaver may have been impaired at the time of the accident, primarily due to a blood-alcohol level of .05%. The plaintiffs argue that she was not impaired, that she drank part of a single cocktail on the night of the accident, and that a blood-alcohol level of .05% raises no legal presumption of impairment. It is undisputed that the train crew sounded the train's horn and bell, that the train's headlight was working prior to the collision, and that the crossing warning devices were working immediately after the collision.

The plaintiffs contend that the warning devices at the Mulberry Street crossing have malfunctioned on a continuous and chronic basis. The plaintiffs presented witnesses who testified to the activation of the crossing gate and warning devices for long

---

[1]There were two lanes for traffic travelling in the direction of the Weaver automobile.

periods when there was no train approaching, to instances when the gate arms did not come down until the train was almost at the crossing, and to instances when the gate arms went up and down in a hatchet fashion or came down only half way. Two witnesses saw the warning devices at the crossing malfunction on separate occasions several hours prior to the accident, and another saw them malfunction the morning after. The Mayor of Austell, the City Council, a State Representative, and numerous private citizens complained to Norfolk about the warning devices at the crossing for many years, but the malfunctions continued.

## II. STANDARD OF REVIEW

Summary judgment is proper if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corporation v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The evidence must be viewed in the light most favorable to the non-moving party. *Augusta Iron and Steel Works, Inc. v. Employers Insurance of Wausau,* 835 F.2d 855, 856 (11th Cir.1988).

## III. ANALYSIS

### A. Federal Preemption

#### i. Defective Design

The provisions of 23 C.F.R. §§ 646.214(b)(3) and (4), where applicable, preempt state tort law. *CSX Transportation Company v. Easterwood,* 507 U.S. 658, ---- - ----, 113 S.Ct. 1732, 1740-41, 123 L.Ed.2d 387 (1993). For railroad crossing projects "in which federal funds participate in the installation of warning devices,

the Secretary has determined the devices to be installed and the means by which railroads are to participate in their selection." *Id.* at ----, 113 S.Ct. at 1741. Thus there can be no state law claim against the railroad for defective design. *Id.* The crossing devices at issue in this case were federally funded, and so the state tort claim for defective design is preempted, so long as the railroad complied with the federal regulations.

However, the plaintiffs contend that Norfolk violated federal regulations by installing a gate arm shorter than the one called for in the design.[2] Norfolk contends that it had Federal Highway Administration Approval for the shorter arm after it was installed, but the record only reflects an inspection by the Georgia Department of Transportation. We leave it to the District Court on remand to determine whether Norfolk complied with the federal regulations in this regard. If not, then the plaintiffs do have a state law tort claim for negligent design or construction, based on the violation of the federal regulations.

ii. Negligent Maintenance and Failure to Warn

The District Court ruled that the plaintiffs' claims for negligent maintenance of the crossing and for failure to warn the public of the defective nature of the crossing were also preempted by 23 C.F.R. § 646.214. We disagree. The Supreme Court in *Easterwood* held that 23 C.F.R. §§ 646.214(b)(3) and (4), where applicable, preempt state tort law. However, those regulations

---

[2]The design called for a gate arm extending 28 feet completely across the two lanes for southbound traffic. The arm installed blocked only one lane and some three feet of the second.

deal with the design and installation of new warning devices, not the maintenance of those devices or the failure to warn the public of defective devices.[3] Thus 23 C.F.R. §§ 646.214(b)(3) and (4) are not applicable to a claim for negligent maintenance or for failure to warn, and do not preempt such claims.[4]

### iii. Excessive Speed

Any state law claim based on the train's alleged excessive speed is preempted by federal law, specifically the train speed regulations set out in 49 C.F.R. § 213.9. *Easterwood,* 507 U.S. at ----, 113 S.Ct. at 1742-43. The track at the Mulberry Street crossing is classified as class 4, with a national speed limit of 60 miles per hour for freight trains. There is no indication that the Norfolk train was travelling over 60 miles per hour.

The plaintiffs also argue that the train crew was negligent for exceeding the railroad's own self-imposed speed limit. Violation of the railroad's own speed regulations may be evidence of negligence in a state tort claim for excessive speed; however, such a state tort claim is preempted by federal law, and the internal railroad regulations would be irrelevant under federal law. 49 C.F.R. § 213.9 sets out specific speed limits for different types of tracks and trains; those limits are not

---

[3]In the *Easterwood* case, the plaintiff brought suit against the railroad for "failing to maintain adequate warning devices at the crossing." *Easterwood,* 507 U.S. at ----, 113 S.Ct. at 1736. That language should not be misinterpreted. It was not a suit for negligent maintenance of the warning devices installed at the crossing, but rather for "the absence of proper warning devices." *Id.*

[4]We express no opinion as to whether other provisions of federal law would serve to preempt such a claim. No other provisions were raised on appeal or briefed by the parties.

affected by internal railroad policies.

We note, however, that while state law tort claims for excessive speed are preempted, the Supreme Court specifically left open the question of whether federal law bars suit for "breach of related tort law duties, such as the duty to slow or stop a train to avoid a specific, individual hazard." *Easterwood,* 507 U.S. at ----, 113 S.Ct. at 1743. Nor has this Court decided the issue. The opinion in *Mahoney v. CSX Transportation, Inc.,* 966 F.2d 644 (11th Cir.1992), which was first vacated and then reinstated in its entirety by the court of appeals en banc at 993 F.2d 211 (1993), merely holds that pure excessive speed claims are preempted, not that all related claims are as well. We leave it to the District Court on remand to decide whether the plaintiffs have established a violation of such a related tort law duty, and whether they have presented sufficient evidence to make this a jury issue.

## B. Sole Proximate Cause

The District Court held that Ms. Weaver reasonably should have been aware of the oncoming train and that she was the sole proximate cause of the accident. Thus, her representatives could not recover from the railroad. The District Court went on to deny recovery to the representatives of Mr. Michael, the passenger. Under Georgia law, a driver's negligence cannot be imputed to a passenger; if the Norfolk was only 1% responsible, then Mr. Michael could recover from the railroad. *See Central of Georgia Railway Company v. Luther,* 128 Ga.App. 178, 182, 196 S.E.2d 149, 153 (1973); *Isom v. Schettino,* 129 Ga.App. 73, 76, 199 S.E.2d 89, 93 (1973). However, if the driver is the sole proximate cause of

the accident because she knew or should have known of the approaching train, then the railroad cannot be liable (even to the passenger) for failing to provide adequate warning of the approaching train. *See Southern Ry. Co. v. Blake,* 101 Ga. 217, 29 S.E. 288 (1897); *Seaboard Coast Line R.R. Co. v. Mitcham,* 127 Ga.App. 102, 192 S.E.2d 549 (1972). The District Court ruled as a matter of law that Ms. Weaver should have known of the approaching train. Under the circumstances of this accident, we hold that this is a question for the jury.

It is true, as the District Court noted, that Norfolk presented undisputed evidence that the train crew sounded the train's horn and bell, that the train's headlight was working prior to the collision, and that the crossing warning devises were working immediately after the collision. Norfolk also presented an affidavit from Mr. Aaron Morris, the train's brakeman, stating that Ms. Weaver was travelling at a high rate of speed, and that she drove around the gate on the wrong side of the road, in an effort to beat the train.

However, other evidence contradicted Mr. Morris's affidavit. First, an expert in accident reconstruction opined that Ms. Weaver was travelling at only five to ten miles per hour, making it unlikely that she was trying to beat the train. Second, the gate arm did not extend more than three feet into Weaver's lane, making it unnecessary for her to go around the gate onto the wrong side of the road even if the gate was down. Third, Mr. Morris never activated the train's brakes; the engineer activated the brakes after the impact. Last, the train's engineer stated in a

deposition that he and Mr. Morris discovered that they had hit a car only after the impact.

The plaintiffs also presented evidence that the weather was extremely foggy and that visibility was limited, making it more likely that Weaver would not have seen the train even if she had been exercising due care. Moreover, the windows were up in Weaver's car because of the cold, making it more likely that she might not have heard the train even though exercising due care.[5]

In addition, the plaintiffs presented evidence that the warning devices at the Mulberry Street crossing have malfunctioned on a continuous and chronic basis. The plaintiffs presented witnesses who testified to the activation of the crossing gates and warning devices for long periods when there was no train approaching, to instances when the gate arms did not come down until the train was almost at the crossing, and to instances when the gate arms went up and down in a hatchet fashion or came down only half way. Two witnesses saw the warning devices at the crossing malfunction on separate occasions several hours prior to the accident, and another saw them malfunction the morning after. The Mayor of Austell, the City Council, a State Representative, and numerous private citizens complained to Norfolk about the warning

---

[5]As noted in *Easterwood v. CSX Transportation, Inc.,* 933 F.2d 1548, 1560 (11th Cir.1991), *aff'd,* 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993), a driver would be contributorily negligent as a matter of law if she violated Ga.Code Ann. § 40-6-140, which requires a motorist to stop at all grade crossings when a "clearly visible ... signal device gives warning of the immediate approach of a train." *See Atlantic Coast Line R.R. Co. v. Hall Livestock Co.,* 116 Ga.App. 227, 156 S.E.2d 396 (1967). However, if the driver was actually unaware of the approaching train, then a common-law reasonableness standard applies, not the Georgia statute. *Id.* 156 S.E.2d at 398.

devices at the crossing for many years, but the malfunctions continued.[6] Under these circumstances, it seems to us that a jury could conclude that Norfolk was guilty of negligence that proximately contributed to this tragic accident.

Viewing this evidence in the light most favorable to the plaintiffs, as we must, and considering that matters of contributory negligence are almost invariably a question for the jury on which the defendant bears the burden of proof at trial, we hold that summary judgment was not warranted.

## IV. CONCLUSION

We REVERSE the District Court's summary judgment and REMAND for further proceedings consistent with this opinion.

---

[6]Norfolk cites *Iler v. Seaboard Air Line R. Co.,* 214 F.2d 385 (5th Cir.1954) for the proposition that evidence of unreliable warning equipment is irrelevant because ordinary care demands that a driver look before crossing, even if the equipment routinely gives false warnings. While that proposition is true, the evidence of unreliable equipment becomes relevant where the jury could conclude that the driver was not aware of the train even though she exercised ordinary care (for example, because of the fog), or that the equipment was not working when the driver approached the crossing (for example, because the warning devices sometimes began to operate only seconds before the train arrived and the gates sometimes did not lower all the way).