686 So.2d 1115 (1996)
Douglas K. HAMLIN, as conservator of the Estate of Cinda S. Karjala, an incapacitated person
v.
NORFOLK SOUTHERN RAILWAY COMPANY and Danny Steve Garner.
Bruce LANG and Peggy Lang
v.
SOUTHERN RAILWAY, et al.
1931221, 1931292.
Supreme Court of Alabama.
July 12, 1996.
Rehearing Denied November 22, 1996.
*1116 Douglas C. Martinson and Douglas C. Martinson II of Martinson & Beason, P.C., Huntsville, for Douglas K. Hamlin.
Garve Ivey, Jr., Salem N. Resha, Jr., and Charles E. Harrison of Wilson & King, Jasper, for Bruce Lang and Peggy Lang.
Robert C. Dillon and George A. Monk of Merrill, Porch, Dillon & Fite, P.A., Anniston, and Crawford S. McGivaren, Jr. of Cabiness, Johnston, Gardner, Dumas & O'Neal, Birmingham, for Norfolk Southern Railway Company (1931292).
Schuyler H. Richardson III, Patrick W. Richardson and Tammy L. Frazier of Bell Richardson, P.A., Huntsville, and Crawford S. McGivaren, Jr. of Cabiness, Johnston, Gardner, Dumas & O'Neal, Birmingham, for *1117 Norfolk Southern Railway Company and Danny Steve Garner (1931221).
KENNEDY, Justice.
The plaintiffs in these two cases appeal from summary judgments for defendant, Norfolk Southern Railway Company.
A summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c)(3), A.R.Civ.P. In order to defeat a properly supported motion for summary judgment, the nonmovant must present substantial evidence creating a genuine issue of material fact. § 12-21-12, Ala.Code 1975. "Substantial evidence" means "evidence of such weight and quality that fair-minded persons in exercise of impartial judgment can reasonably infer existence of the fact sought to be proved." West v. Founders Life Assurance Co., 547 So.2d 870, 871 (Ala.1989).
These cases arose following automobile-train collisions at two separate railroad crossings. At one of those crossings, David Alan Lang was killed, and at the other crossing Cinda S. Karjala suffered permanent brain damage and paralysis.
It is undisputed that neither crossing had "active" warning devices, such as flashing lights, bells, or gates.[1] However, both crossings did have "passive" warning devices, such as a "crossbuck"[2] and a stop sign.[3] Additionally, there was evidence in the Lang case that some of the painted warning signs were faded from view, that vegetation had blocked some of the warnings, and that some of the passive warning signs were missing. The evidence concerning the accident involved in the Hamlin case was that there was a dense fog in the area and that Norfolk Southern knew that this area was subject to fog that blocked the passive warning signs.
Both sets of plaintiffs sued Norfolk Southern, alleging, among other things, that it had negligently and/or wantonly failed to provide and maintain adequate warning signals at either of the respective railroad crossings. Norfolk Southern successfully moved for summary judgment as to these claims, arguing that they were preempted by federal law. The plaintiffs appeal, arguing that the preemption doctrine does not apply to bar adjudication of the state tort law claims.
The United States Supreme Court in CSX Transportation, Inc. v. Easterwood, 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993), examined a case similar to these two cases. Easterwood arose out of an automobile-train collision at a railroad crossing, and it involved a state tort law claim based on an alleged failure to provide adequate warning signals. Thomas Easterwood was killed when a CSX train collided with his truck. His widow contended "that CSX was negligent under Georgia law for failing to maintain adequate warning devices at the crossing." 507 U.S. at 661, 113 S.Ct. at 1736. At the crossing where Easterwood was killed, there were dual flashing lights, crossbucks, advance yellow warning post signs, and pavement markings. Easterwood's widow claimed that CSX had negligently failed to install gate arms and that the flashing lights were positioned in such a manner that the lights were obscured by sunlight. See Easterwood v. CSX Transportation, Inc., 933 F.2d 1548 (11th Cir.1991).
The trial court entered a summary judgment for CSX; the Eleventh Circuit Court of Appeals affirmed in part and reversed in *1118 part. The Supreme Court granted certiorari review to address the preemptive effect of the Federal Railroad Safety Act ("FRSA") on negligence claims against railroads.
The purpose of FRSA is "to promote safety in all areas of railroad operations and to reduce railroad-related accidents." 45 U.S.C. § 421. FRSA mandates that the Secretary of Transportation study safety problems posed by railroad crossings and develop solutions for those problems. 45 U.S.C. § 431. The Secretary of Transportation is also empowered to prescribe "appropriate rules, regulations, orders, and standards for all areas of railroad safety." § 431(a). Section 434 of Title 45, part of FRSA, contains saving and pre-emption clauses; it reads as follows:
"The Congress declares that laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement. A State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety when necessary to eliminate or reduce an essentially local hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce."
"Where a state statute conflicts with or frustrates federal law, the [state statute] must give way" to the federal law. Easterwood, 507 U.S. at 663, 113 S.Ct. at 1737. "In the interest of avoiding unintended encroachment on the authority of the States, however, a court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find pre-emption. Thus, pre-emption will not lie unless it is `the clear and manifest purpose of Congress.'" Easterwood, 507 U.S. at 663-64, 113 S.Ct. at 1737, quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947).
Following a report by the Secretary of Transportation concerning crossing grades, Congress responded by enacting the Highway Safety Act. The Act provides that States are entitled to federal funds to improve grade crossings. In return, the States are to "conduct and systematically maintain a survey of all highways to identify those railroad crossings which may require separation, relocation, or protective devices, and establish and implement a schedule of projects for this purpose." Easterwood, 507 U.S. at 663, 113 S.Ct. at 1737, quoting 23 U.S.C. § 130(d). The Federal Highway Administration ("FHWA") promulgated regulations to improve grade crossings under the FRSA and the Highway Safety Act.
The issue in Easterwood was whether the Secretary of Transportation had issued regulations covering the same subject matter as Georgia negligence law pertaining to the maintenance of grade crossings and the operation of trains at grade crossings. The Supreme Court held that the federal regulations adopted by the Secretary of Transportation preempted Easterwood's negligence action only insofar as it asserted that CSX's train was traveling at an excessive speed.
The Supreme Court discussed other federal regulations relevant to Easterwood's claim. Under 23 C.F.R. pt. 924 (1992), States receiving federal aid must establish a highway safety program identifying all types of highway hazards and guiding the State in implementing and evaluating remedial measures. In setting priorities, the States are to rank the dangers posed by grade crossings. § 924.9(a)(4). After developing a program, a State must evaluate the effectiveness and costs, § 924.13, and file yearly reports with the FHWA. § 924.15.
The Supreme Court stated that it was not prepared to find preemption on the basis of 23 C.F.R. pt. 924. Specifically, the Court stated:
"These provisions establish the general terms of the bargain between the Federal and State Governments: The States may obtain federal funds if they take certain steps to ensure that the funds are efficiently spent. On its face, this federal effort to *1119 encourage the States to rationalize their decisionmaking has little to say about the subject matter of negligence law, because, with respect to the grade crossing safety, the responsibilities of railroads and the State are, and traditionally have been, quite distinct. Before the enactment of FRSA, for example, Georgia's authority over grade crossing improvements did not excuse a railroad's liability in negligence for failing to maintain a safe crossing, see n. 5, supra, just as a jury finding of railroad negligence bore no particular significance on the State's safety efforts beyond that which the State wished to give it.... In light of the relatively stringent standard set by the language of § 434 [regarding pre-emption] and the presumption against pre-emption, and given that the regulations provide no affirmative indication of their effect on negligence law, we are not prepared to find pre-emption solely on the strength of the general mandates of 23 CFR pt. 924."
Easterwood, 507 U.S. at 667-68, 113 S.Ct. at 1739-40.
Because these two appeals are concerned with whether federal statutes concerning the use of particular warning devices preempt state law, the portion of the Easterwood opinion discussing those specific statutes is the basis for our holding. The Supreme Court noted that states receiving federal funds must employ devices that conform to standards set out in the FHWA's Manual on Uniform Traffic Control Devices for Streets and Highways ("MUTCD"). 23 C.F.R. §§ 646.214(b), 655.603 (1992).
"In addition, for projects which involve grade crossings `located with the limits of or near the terminus of a Federal-aid highway project for construction of a new highway or improvement of [an] existing roadway,' see § 646.214(b)(2), or in which `Federal-aid funds participate in the installation of the [warning] devices,' regulations specify warning devices that must be installed. See §§ 646.214(b)(3) and (4)."
Easterwood, 507 U.S. at 666, 113 S.Ct. at 1739.
Under § 646.214(b)(3), states must employ automatic gates with flashing light signals as part of any improvement project that concerns a crossing that features one or more of the following features: 1) multiple main line tracks; 2) multiple tracks at or near the crossing that may be occupied by a train so as to obscure the movement of an approaching train; 3) high speed trains operating in areas of limited visibility; 4) high speed trains combined with a moderately high volume of traffic; 5) either a high volume of traffic, high number of train movements, substantial numbers of school buses or trucks carrying hazardous materials, unusually restricted sight distances, continuing accident occurrences, or any combination of these; or 6) where a diagnostic team made up of representatives of the parties of interest in the crossing recommends them.
When railroad crossings do not present any of the conditions set out in § 646.214(b)(3), then "the type of warning device to be installed, whether the determination is made by a State regulatory agency, State highway agency, and/or the railroad, is subject to the approval of FHWA." § 646.214(b)(4).
The Easterwood Court held that the mandate that the States comply with the MUTCD does not cover the subject matter of the tort law of grade crossings. In Easterwood, CSX argued that 23 C.F.R. § 646.214(b)(1), along with Part VIII of the Traffic Control Systems for Railroad-Highway Grade Crossings Manual combined to create a situation where state law was preempted by federal law. The Court found this argument to be implausible. 507 U.S. at 669, 113 S.Ct. at 1740.
The Supreme Court next looked to §§ 646.214(b)(3) and (4), which, unlike the foregoing provisions, did establish requirements for the installation of particular warning devices. The Easterwood Court held that "[e]xamination of these regulations demonstrates that, when they are applicable, state tort law is pre-empted. However [CSX] has failed to establish that the regulations apply to [this case], and hence we find [Easterwood]'s grade crossing claim is not pre-empted." 507 U.S. at 670, 113 S.Ct. at 1740-41.

*1120 "[U]nder §§ 646.214(b)(3) and (4), a project for the improvement of a grade crossing must either include an automatic gate or receive FHWA approval if federal funds `participate in the installation of the [warning] devices.' Thus, unlike the Manual, § 646.214(b)(3) and (4) displace state and private decisionmaking authority by establishing a federal-law requirement that certain protective devices be installed or federal approval obtained. Indeed, §§ 646.214(b)(3) and (4) effectively set the terms under which railroads are to participate in the improvement of crossings. The former section envisions railroad involvement in the selection of warning devices through their participation in diagnostic teams which may recommend the use or nonuse of crossing gates. §§ 646.214(b)(3)(i)(F) and (3)(ii). Likewise, § 646.214(b)(4), which covers federally funded installations at crossings that do not feature multiple tracks, heavy traffic, or the like, explicitly notes that railroad participation in the initial determination of `the type of warning device to be installed' at particular crossings is subject to the Secretary's approval. In either case, the Secretary has determined that the railroads shall not be made to pay any portion of installation costs. 23 CFR § 646.210(b)(1) (1992). In short, for projects in which federal funds participate in the installation of warning devices, the Secretary has determined the devices to be installed and the means by which railroads are to participate in their selection. The Secretary's regulations therefore cover the subject matter of state law which, like the tort law on which [Easterwood] relies, seeks to impose an independent duty on a railroad to identify and/or repair dangerous crossings."
507 U.S. at 670-71, 113 S.Ct. at 1740-41 (emphasis added).
Where a state law conflicts with or frustrates a federal law, the state law must give way. U.S. Const., Art. VI, cl. 2; Maryland v. Louisiana, 451 U.S. 725, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981). "In the interest of avoiding unintended encroachment on the authority of the States, however, a court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find pre-emption. Thus, pre-emption will not lie unless it is `the clear and manifest purpose of Congress.'" Easterwood, 507 U.S. at 663-64, 113 S.Ct. at 1737 (emphasis added).
In Michael v. Norfolk Southern Ry., 74 F.3d 271 (11th Cir.1996), a Norfolk Southern train collided with an automobile, killing both occupants. The evidence presented in favor of the plaintiffs (representatives of the driver and passenger) was that the car was travelling only 5 to 10 miles per hour, that it was extremely foggy, that the active warning signals had malfunctioned, and that the crossing bar did not comply with federal regulations. The trial court entered summary judgment in favor of Norfolk Southern holding that the state law claims of negligence were preempted by federal law. The Eleventh Circuit reversed.
Regarding the claims of negligent maintenance and failure to warn the public of the defective nature of the crossing, the Eleventh Circuit held that the state claims were not preempted by 23 C.F.R. § 646.214(b)(3) or (4). The court noted that those regulations deal with the design and installation of new warning devices and not the maintenance of those devices, or the failure to warn the public of defective devices. The court held that these federal regulations were not applicable to the negligent maintenance claim or the failure-to-warn claim, based on Easterwood.
Looking at the evidence submitted in support of the defendant's motion for summary judgment and viewing that evidence in a light most favorable to the plaintiffs, as we are required to do, we hold, in accordance with the Eleventh Circuit's rationale in Michael, that the plaintiffs' claims are not preempted by federal law. Therefore, we reverse and remand.
REVERSED AND REMANDED.
HOOPER, C.J., and ALMON, SHORES, INGRAM, and BUTTS, JJ., concur.
MADDOX and HOUSTON, JJ., dissent.
*1121 MADDOX, Justice (dissenting).
The ultimate question presented for review here is whether the Federal Railroad Safety Act of 1970 (FRSA), 45 U.S.C. §§ 421-447, preempts these two tort claims, which arise out of accidents at two railroad crossings at which the plaintiffs claim the warning devices were inadequate or defective.[4]
The majority holds that the preemption doctrine does not apply. Although the doctrine of federal preemption, especially of a state tort claim, is sometimes confusing and difficult to understand, I have concluded, after carefully reviewing the law of federal preemption, especially as it relates to the adequacy of warning signs or devices when the evidence shows that federal funds were used to improve safety at a particular railroad crossing, as in these cases, that the doctrine applies in these two cases and that the trial judges correctly entered a summary judgment for the defendants in each case. Consequently, I must respectfully dissent.
These cases arise out of two motor vehicle-train collisions that occurred at separate train crossings. Although the legal issue is the same in both cases, I will address the facts of each case separately.

The Hamlin Case
The injured motorist, Cinda S. Karjala, was traveling on Brock Road in Madison County, at 4:00 a.m. in the morning in a patchy fog and attempting to cross a railroad intersection when her car collided with a Norfolk Southern Railway train. The plaintiff, as conservator of the estate of Ms. Karjala, who is now incapacitated, brought this action against Norfolk Southern Railway Company and its engineer, Danny Steve Garner.
The defendants filed a motion for summary judgment and in support of their motion they presented an affidavit of a witness who had been following Ms. Karjala. The witness stated, "I was watching Ms. Karjala, to see if she slowed, but her brake lights never came on and I was not able to tell that she slowed at all." (C.R. 143.) The crossing was marked with advance warning signs, pavement markings, a stop sign, and crossbucks. The defendants also filed another affidavit, executed by Dykes T. Rushing, who was employed by the Alabama State Department of Transportation as an office engineer; he stated that federal funds were used in the installation of the warning signs and pavement markings at the Brock Road crossing.[5]
The defendants moved for a summary judgment, based on the holding of the United States Supreme Court in CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). The trial court entered a summary judgment with the following order:
"This matter is presented to the Court on various motions including the defendants' motion for summary judgment. Because this court is of the opinion that the plaintiff's claims against the defendants for negligence and wantonness are preempted by the Federal Railroad Safety Act of 1970 (FRSA), 45 U.S.C. §§ 421-447 (1988 and Supp. II 1990), it is necessary only to address the defendants' motion for summary judgment based on the claim of preemption.
"In this case, the plaintiff [Douglas K. Hamlin] seeks to recover from the defendants damages for personal injuries which [the plaintiff] claims resulted from the defendants' negligence and/or wantonness in the maintenance of a railroad crossing located on Brock Road in Madison County, Alabama. On the occasion of the accident made the basis of this suit, [Ms. Karjala] drove her motor vehicle into the 106th train car of the defendants' train. The *1122 accident occurred at night and in patchy fog.
"The plaintiff's claims are based on allegations that the crossing was ultrahazardous; that the defendants failed to provide and maintain adequate warning devices at the crossing; and, that the defendants were negligent and/or wanton in failing to have illumination devices on the side of its train cars.
"In support of its motion for summary judgment, the defendants have presented the affidavit of Dykes T. Rushing, Office Engineer for the Alabama Department of Transportation, who is responsible for the oversight of the Alabama State Department of Transportation Records of Federal Aid Projects. He is also the custodian of those records. He testified that the Brock Road crossing at issue in this case involved participation by the Federal Highway Administration and utilized federal funds for the improvement of that crossing including the installation of warning devices. This evidence is not disputed.
"Based on these undisputed facts, this Court concludes that there is no genuine issue of material fact and [that] the defendants are entitled to a judgment as a matter of law on the plaintiff's claims of failure to provide and maintain adequate warning devices at the crossing. This decision is based on the preemption of such claims as set out in Borden v. CSX Transportation, Inc., 843 F.Supp. 1410 (M.D.Ala.1993), and CSX Transportation, Inc. v. Easterwood, [507 U.S. at 668,] 113 S.Ct. at 1740-41.
"With regard to the plaintiff's claims that the [defendant railway] failed to have illumination devices on its train cars, this Court finds that there is no federal or state duty to provide such illumination devices. The Federal Railway Safety Act regulations occupy the field of warning devices and railroad safety so as to preempt any state law requirements for such illumination devices. Accordingly, the Court finds that summary judgment is due to be granted in favor of the defendants as to that claim.
"It is therefore ORDERED, ADJUDGED AND DECREED by the Court that summary judgment be and the same is hereby entered in favor of the defendants on the claims of the plaintiff.... Costs are taxed to the plaintiff."
(C.R. 444-46.)

The Lang case
The accident involved in the Lang case occurred in Oxford, Alabama, at approximately 6:00 p.m. at the intersection of Pace Street and Norfolk Southern's main line track. There were two double-faced crossbuck signs, one on each side of the track, and a red and white octagonal "STOP" sign on the south side of the track. The driver, David Alan Lang, pulled in behind another car that was stopped at the track, waiting for the train involved in this accident to pass. Mr. Lang pulled around the car that was stopped at the crossing and had proceeded across the tracks when the collision occurred; he died as a result of this collision.
As with the crossing in the Hamlin case, federal funds were also used in the installation of advance warning signs on both sides of the crossing involved in the Lang case, and no-passing zone signs were placed on both sides of the crossing, and "R X R" pavement markings were painted on both sides of the crossing. (C.R. 557-602.) Dykes T. Rushing, who had prepared an affidavit for filing in the Hamlin case, also made an affidavit in the Lang case. In his affidavit he stated that he was employed by the Alabama State Department of Transportation as an office engineer, that the Federal Highway Administration had approved and authorized the project to install passive warning devices at this particular crossing, and that federal funds were used in the project. As in the Hamlin case, the trial court entered a written order granting the defendant's motion for summary judgment:
"The matters addressed by this Order have been the subject of several hearings as well as two trial settings in the last three weeks. The defendants, Norfolk Southern Railway Company and its engineer, Terry Wayne Clements, had timely filed a Motion for Summary Judgment prior to the original trial setting on May 9, 1994. In the week preceding that setting, *1123 the defendants discovered certain documents in the possession of the state and local governments that supported defendants' defense of federal preemption. The defendants were not ... signatory to these documents and had not previously had knowledge of them. For reasons unrelated to the discovery of these documents, but also in order to have more time to consider the effect of these documents on their claims, plaintiffs requested a continuance of the trial setting on May 9, 1994. The Court offered plaintiffs the option of proceeding with a hearing on defendants' summary judgment motion without consideration of the newly discovered documents and then to trial if the motion was overruled or a continuance with the agreement and understanding of all parties that the Court would have a hearing on the defendants' Motion for Summary Judgment on May 20, 1994, and a new trial setting of May 23, 1994. Plaintiffs elected the option of a continuance and later hearing.
"On May 20, a hearing was held and [it] involved a full and complete examination of all matters pertinent to and submitted in support of or [in] opposition to defendants' Motion for Summary Judgment. These essential facts regarding the accident are uncontroverted. The accident occurred at approximately 6 p.m., February 21, 1988, at the intersection of Pace Street and the Norfolk Southern Railway Company main line in the City of Oxford, Calhoun County, Alabama. The automobile driven by plaintiffs' decedent was northbound and the train was westbound. There were two standard double-faced crossbuck signs, one on each side of the track, and a red and white octagonal "STOP" sign on the south side of the track facing northbound traffic on Pace Street at the crossing at the time of the accident. The Lang vehicle pulled up behind another car stopped in the northbound lane at the crossing, either stopped or almost stopped, then pulled around the other car into the southbound lane and proceeded onto the track where the collision occurred. The train, which was travelling a little less than 40 mph, was within the maximum speed of 60 mph permitted by federal regulations.
"At the conclusion of that hearing, based on the undisputed evidence before it, the Court granted the defendants' Motion for Summary Judgment with respect to any claim predicated on negligence or wantonness as to the speed at which the train involved in the accident was operating and as to any claim of negligence or wantonness predicated on the adequacy of the traffic control devices present at the crossing on the date in question. These claims are preempted by federal law. The facts and basis for the Court's ruling as to preemption on signals is discussed in detail below. Counsel for the plaintiffs stipulated in open court that they neither had nor made any claim with respect to the nature or type or adequacy or inadequacy of the horn with which the locomotive was equipped and, accordingly, the Court dismissed that claim with prejudice.
"Thereafter, the Court conducted a hearing pursuant to [Ala.R.Civ.P.] 56(d). Plaintiffs indicated they would proceed to trial on the issues of whether, on the occasion in question, the train crew was maintaining proper lookout, whether the train's horn was blown so as to give proper warning of the train's approach, and whether the railroad had negligently maintained the vegetation within the area along its right-of-way it had undertaken to maintain.
"When the case was called for trial on May 23, 1994, counsel for plaintiffs requested an opportunity to be heard again and to submit additional materials on the issue of preemption as to signs and signals. The Court heard further argument and reviewed, as requested, the deposition of plaintiffs' proffered expert, Mr. Archie Burnham. At the conclusion of the arguments, plaintiffs conceded tat they had no evidence of any negligence or wantonness with respect to any claim against Norfolk Southern or its engineer, Mr. Terry Wayne Clements, except for their claim as to the inadequacy of the signs or signals. Plaintiffs also stipulated that the latter claim was not asserted against the engineer.
"In support of their Motion for Summary Judgment, the defendants presented *1124 the affidavits of Dykes T. Rushing, E.H. Bentley, Michael P. Bucko, and Shirley Henson. Mr. Rushing is Office Engineer for the Alabama Department of Transportation and is responsible for the oversight of the Alabama State Department of Transportation records of federal aid projects. He is the custodian of those records. He testified that the Pace Street crossing at issue in this case involved participation (including approval and authorization of the project) by the Federal Highway Administration and utilized federal funds for the improvement of that crossing by the installation of warning devices prior to the accident in question. The affidavit of Mr. E.H. Bentley established that companies owned by him held the contracts to perform the work of installing the warning devices at the Pace Street crossing called for by the Federal Aid Projects authenticated by Mr. Rushing's affidavit and that work was performed and was complete by July, 1979, and that federal funds paid for the construction. Mr. Michael P. Bucko, Financial Manager for the Alabama Division of the Federal Highway Administration, authenticated documents attached to his affidavit pertaining to the Federal Aid Project involving the installation of traffic control warning devices at several railroad-highway crossings in Oxford, including the Pace Street crossing, in 1978 and established that over $167,000.00 in federal funds were expended on that project, which included Pace Street. The affidavit of Ms. Shirley Henson authenticated a Federal Aid Rail Highway Crossing Project Agreement incident to the same projects and established that the City of Oxford agreed to maintain the warning devices after installation. This evidence is not disputed.
"Based on these undisputed facts, this Court concludes that there is no genuine issue of material fact, that federal funds participated in the installation of warning devices at the crossing in issue, and that the defendant Norfolk Southern Railway Company (plaintiffs having stipulated that this claim is not asserted against the engineer) is entitled to a judgment as a matter of law on the plaintiffs' claims seeking to impose liability on the railroad for inadequate warning devices at the crossing. The Court was not presented with any legal authority establishing that under current Alabama law on the facts of this case Norfolk Southern would have had a duty to have ... signs or signals at this crossing other or different from those that were present, it being undisputed that standard crossbuck signs were in place on both sides of the track as well as a `STOP' sign on the south side facing northbound traffic at the time of the accident. Nevertheless, assuming without deciding that Alabama law might impose such a duty, this decision is based on the preemption of such claims on the reasoning set out in and authority of Borden v. CSX Transportation, Inc., 843 F.Supp. 1410 (M.D.Ala.1993), Armijo v. Atchison, Topeka & Santa Fe Ry., 19 F.3d 547 (10th Cir.1994) and Easterwood v. CSX Transportation, Inc., [507 U.S. at 668], 113 S.Ct. at 1740-41.
"Plaintiffs point out that some of the pavement markings installed under the Federal Aid Projects in 1978 may not have still been present on the date of this accident in 1988. They argue that this abrogated preemption. There are several answers to this. First, no provision of state or federal law imposes on the railroad an obligation to maintain warning devices of the type which were the subject of the federal aid projects and by virtue of which preemption obtains here. Second, the City of Oxford, not the railroad, expressly contracted and agreed to maintain the devices. Third, preemption arises from the exercise of authority, albeit that the exercise of federal authority is in this instance established by proof of a rather mechanical, but substantively important and complex act, i.e., expenditure of federal funds for the installation of passive warning devices. Once federal authority has occupied the field, this Court can find no authority to support the notion that authority may diminish or wear out with passage of time.
"In accordance with the foregoing, it is hereby ORDERED, ADJUDGED AND DECREED, by stipulation of the plaintiffs *1125 in open court, that all claims against the defendant, Terry Wayne Clements, are due to be and the same are hereby dismissed with prejudice.
"It is further hereby ORDERED, ADJUDGED AND DECREED that all claims, by stipulation of the plaintiffs in open court, against Norfolk Southern Railway Company, save except the sole claim with respect to the adequacy of the signs or signals at the crossing, are due to be and the same are hereby dismissed with prejudice to the plaintiffs.
"It is further ORDERED, ADJUDGED AND DECREED by the Court that summary judgment be and the same is hereby entered in favor of the defendant Norfolk Southern Railway Company on the sole remaining claim of the plaintiffs as to the adequacy of the signs or signals at the crossing.... Costs are taxed to the plaintiffs."
(C.R. 649-56.)
I agree with conclusion reached by the trial judge in each case. In my opinion, the Supreme Court of the United States in CSX Transportation, Inc. v. Easterwood, 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993), held that when federal funds are used in the installation of warning devices at a railroad-highway crossing, and where, as here, there was federal participation in the installation of warning devices, then a cause of action that is based on an alleged inadequate or defective safety practice is preempted.[6]
Here, the plaintiffs claim that Norfolk Southern was negligent, specifically that it improperly maintained the crossing and thereby made it hazardous. The plaintiffs argue that the doctrine of federal preemption does not apply to their tort claims, and the majority of this Court agrees with their argument, reversing the judgment entered in each case. I must respectfully disagree with the majority's resolution of this legal issue.

The Federal Railroad Safety Act
The Supreme Court of the United States wrote in Easterwood, 507 U.S. at 661-62, 113 S.Ct. at 1736:
"FRSA was enacted in 1970 `to promote safety in all areas of railroad operations and to reduce railroad-related accidents, and to reduce deaths and injuries to persons....' 45 U.S.C. § 421. To aid in the achievement of these goals, the Act specifically directs the Secretary of Transportation to study and develop solutions to safety problems posed by grade crossings. § 433. In addition, the Secretary is given broad powers to `prescribe, as necessary, appropriate rules, regulations, orders, and standards for all areas of railroad safety....' § 431(a). The pre-emptive effect of these regulations [adopted by the Secretary] is governed by § 434, which contains express saving and pre-emption clauses."
Section 434 states that "[t]he Congress declares that laws, rules, regulations, orders, *1126 and standards relating to railroad safety shall be nationally uniform to the extent practicable" and that "[a] State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement."
In my opinion, the Supreme Court specifically addressed the issue presented here, whether the State tort claim was preempted, in Easterwood, holding that "for projects in which federal funds participate in the installation of warning devices, the Secretary has determined the devices to be installed and the means by which railroads are to participate in their selection," and that in such instances "[t]he Secretary's regulation ... cover the subject matter of state law [including tort claims that seek] to impose an independent duty on a railroad to identify and/or repair dangerous crossings." 507 U.S. at 671, 113 S.Ct. at 1741.
The pertinent sections of the holding in Easterwood are provided below:
"The remaining potential sources of pre-emption are the provisions of 23 CFR §§ 646.214(b)(3) and (4), which, unlike the foregoing provisions, do establish requirements as to the installation of particular warning devices. Examination of these regulations demonstrates that, when they are applicable, state tort law is pre-empted. However, petitioner has failed to establish that the regulations apply to [this case], and hence we find respondent's grade crossing claim is not pre-empted.
"As discussed above, supra, at 666-667 [113 S.Ct. at 1739], under §§ 646.214(b)(3) and (4), a project for the improvement of a grade crossing must either include an automatic gate or receive FHWA approval if federal funds `participate in the installation of the [warning] devices.' Thus, unlike the Manual, §§ 646.214(b)(3) and (4) displace state and private decisionmaking authority by establishing a federal-law requirement that certain protective devices be installed or federal approval obtained. Indeed, §§ 646.214(b)(3) and (4) effectively set the terms under which railroads are to participate in the improvement of crossings. The former section envisions railroad involvement in the selection of warning devices through their participation in diagnostic teams which may recommend the use or nonuse of crossing gates. §§ 646.214(b)(3)(i)(F) and (3)(ii). Likewise, § 646.214(b)(4), which covers federally funded installations at crossings that do not feature multiple tracks, heavy traffic, or the like, explicitly notes that railroad participation in the initial determination of `the type of warning device to be installed' at particular crossings is subject to the Secretary's approval. In either case, the Secretary has determined that the railroads shall not be made to pay any portion of installation costs. § 646.210(b)(1) [(1992)]. In short, for projects in which federal funds participate in the installation of warning devices, the Secretary has determined the devices to be installed and the means by which railroads are to participate in their selection. The Secretary's regulations therefore cover the subject matter of state law which, like the tort law on which respondent relies, seeks to impose an independent duty on a railroad to identify and/or repair dangerous crossings."
507 U.S. at 670-71, 113 S.Ct. at 1740-41 (emphasis added).
In view of the holding in Easterwood, I believe that the trial courts properly entered the summary judgment in each of these cases.
The majority cites Michael v. Norfolk Southern Ry., 74 F.3d 271 (11th Cir.1996), for the proposition that preemption does not apply in these cases. However, Michael dealt with a situation in which the railroad negligently installed a crossing arm that the plaintiffs alleged was shorter than those authorized by FRSA regulations. In Michael, the Eleventh Circuit held:
"The provisions of 23 C.F.R. §§ 646.214(b)(3) and (4), where applicable, preempt state tort law. CSX Transportation, Inc. v. Easterwood, 507 U.S. 658, 670, 113 S.Ct. 1732, 1740-41, 123 L.Ed.2d 387 (1993). For railroad crossing projects `in which federal funds participate in the installation *1127 of warning devices, the Secretary has determined the devices to be installed and the means by which railroads are to participate in their selection.' Id. at 670, 113 S.Ct. at 1741. Thus there can be no state law claim against the railroad for defective design. Id. The crossing devices at issue in this case were federally funded, and so the state tort claim for defective design is preempted, so long as the railroad complied with the federal regulations."
"However, the plaintiffs contend that [Norfolk Southern] violated federal regulations by installing a gate arm shorter than the one called for in the design."
Michael, 74 F.3d at 273.
I realize that these cases have come to us on appeals from summary judgments: however, the operative facts seem to be admitted. I believe that the plaintiffs' claims are preempted and I agree with the decisions of both trial courts; therefore, I must respectfully dissent.
HOUSTON, J., concurs.
NOTES
[1] "Active warning devices" are defined by 23 C.F.R. § 646.204(j) (1992), as "those traffic control devices activated by the approach or presence of a train, such as flashing light signals, automatic gates and similar devices, as well as manually operated devices and crossing watchmen, all of which display to motorists positive warning of the approach or presence of a train."
[2] A "crossbuck" sign is two narrow white overlapping boards in the shape of an "X." The words "RAILROAD" and "CROSSING" are written across the overlapping boards in black paint.
[3] "Passive warning devices" are defined under 23 C.F.R. § 646.204(i) as "those ... traffic control devices, including signs, markings and other devices, located at or in advance of grade crossings to indicate the presence of a crossing but which do not change aspect upon the approach or presence of a train."
[4] These cases involved two separate railroad crossings, but the legal issue presented is the same in both cases; therefore, they have been consolidated for the purpose of writing one opinion.
[5] The project as a part of which these warning devices were installed included the pavement markings, reflective yellow advance warning signs, and circular signs displaying a cross with the letters "RR" in black, and Rushing stated that "[t]he design and installation of these signs and pavement markings were approved and authorized by the Federal Highway Administration and federal funds were expended for the design and placement of these signs and pavement markings." (C.R. 128.)
[6] Hatfield v. Burlington N.R.R., 507 U.S. 1048, 113 S.Ct. 1940, 123 L.Ed.2d 646 (1993) (remanded for further consideration in light of CSX Transp. v. Easterwood); Elrod v. Burlington N.R.R., 68 F.3d 241 (8th Cir.1995) (motorists' state law negligence claim based on failure to provide adequate warning devices at crossing was preempted); Thiele v. Norfolk & W. Ry., 68 F.3d 179 (7th Cir.1995); Hester v. CSX Transp., 61 F.3d 382 (5th Cir.1995), cert. denied, ___ U.S. ___, 116 S.Ct. 815, 133 L.Ed.2d 760 (1996) (FRSA preempted state law claims based on inadequate signalization at crossing); Shots v. CSX Transp., 38 F.3d 304 (7th Cir.1994) (held that federal financial assistance in placing reflectorized crossbucks at intersection in question did not preempt state regulation of crossing safety); Armijo v. Atchison, T. & S.F. Ry., 27 F.3d 481 (10th Cir.1994) (remanded for a factual determination as to whether federal funds participated in the installation of warning devices); Williams v. Burlington N.R.R., 849 F.Supp. 682 (E.D.Ark. 1994) (material issue of fact existed as to whether diagnostic team visited the crossing site to determine proper warning signs); Hatfield v. Burlington N.R.R., 848 F.Supp. 158 (D.Kan. 1994), affirmed by, 64 F.3d 559 (10th Cir.1995) (held that fact that federal government explicitly undertook to provide funding for preliminary engineering of crossing upgrade prior to accident was sufficient to trigger federal preemption); Armstrong v. Atchison, T. & S.F. Ry., 844 F.Supp. 1152 (W.D.Tex.1994) (held that FRSA preempted plaintiff's claim against the railroad; summary judgment entered); Borden v. CSX Transp., 843 F.Supp. 1410 (M.D.Ala.1993) (negligence and wantonness claims were preempted insofar as they related to defendants' failure to provide and maintain adequate warning devices and insofar as they related to vegetation on and adjacent to railbed).